Henry W. HARDING, an owner of 330,-500 shares of common stock of Siboney Corporation, et al., Plaintiffs-Appellants,

v.

AMERICAN STOCK EXCHANGE, INC., Defendant-Appellee.

No. 75–2745.

United States Court of Appeals, Fifth Circuit.

March 8, 1976.

Richard J. Reese, Donald B. Yarbrough, George W. Schalles, III, Houston, Tex., for plaintiffs-appellants.

William C. Harvin, John C. Held, Roy Nolen, Houston, Tex., for defendant-appellee.

Before GOLDBERG, DYER and SIMPSON, Circuit Judges:

DYER, Circuit Judge:

Harding brought suit individually and on behalf of the other stockholders of Siboney Corporation (Siboney) against the American Stock Exchange (AMEX)

for alleged violations of the antitrust and civil rights laws [1] for suspending the trading in Siboney stock and AMEX's application to the Securities and Exchange Commission (SEC) for delisting of Siboney stock. The district court dismissed the action. We affirm.

Siboney common stock was first listed on AMEX in 1956. One of the prerequisites to listing on AMEX is the execution of an agreement in which a registrant agrees to abide by the rules and regulations of AMEX. The rule here pertinent provides that AMEX would

> give consideration to suspending dealings in, or removing from the list . . . common stock selling for a substantial period of time at a low price per share (generally below $5 per share) if the issuer shall fail to effect a reverse split of such shares within a reasonable time after being notified that the Exchange deems such action to be appropriate under all the circumstances. In this connection, the Exchange will give due consideration to all pertinent factors, including market conditions in general, the number of shares outstanding, plans which may have been formulated by management, applicable regulations of the state or country of incorporation or of any governmental agency having jurisdiction over the company, the relationship to other Exchange policies regarding continued listing, etc. CCH, 2 American Stock Exchange Guide, ¶ 10,051.

In the late 1960's Siboney stock began to sell at a low price per share. Predictably, in July, 1967, the Committee on Securities of AMEX notified Siboney that it should effect a reverse split of its stock. In 1968 and 1970, Siboney submitted to its stockholders proposals to reverse split the stock but they were rejected.

AMEX accordingly notified Siboney that a meeting would be held on December 8, 1970, by the Committee on Securities to consider the delisting of Siboney common stock. Siboney was given the opportunity for a hearing at this time.

On December 8, Siboney's president appeared and made a presentation to the Committee. He argued that a reverse split was an unwise financial action because of existing market conditions and because there was no assurance that it would result in a higher selling price. The Committee was not persuaded, however, and it recommended to the Board of Governors of AMEX that trading in Siboney stock be suspended and that an application be filed with the SEC to delist the stock.[2]

On December 17, 1970, the Board of Governors concurred in the Committee's recommendation. Trading in Siboney stock was ordered suspended prior to the opening of the market on December 18, 1970. The application to strike Siboney from listing was subsequently filed with the SEC and a copy sent to Siboney's president, as required by SEC rule, 17 CFR § 240.12d–2(e)(2).

On January 8, 1971, the SEC issued its order striking the common stock of Siboney from listing and registration on AMEX. Siboney did not seek review of that order.

Harding owns 330,500 shares of Siboney common stock. On July 17, 1972, he brought this action against AMEX. The thrust of the complaint is an unlawful conspiracy by AMEX "to deprive plaintiffs of rights in restraint of trade and commerce in the purchase and sale of securities," and AMEX's failure to provide due process safeguards in its consid-

---

1. Harding alleged jurisdiction under §§ 1 and 2 of the Sherman Act, 15 U.S.C.A. §§ 1 and 2, § 4 of the Clayton Act, 15 U.S.C.A. § 15, and 42 U.S.C.A. § 1988.

2. The Committee made its recommendation on the bases (1) that during the year 1970 Siboney Common Stock sold in a price range of $1½ to $3⅞, and that during the previous four years the stock had sold above $5 per share for only brief periods, and (2) that the Company had a very large capitalization in relation to its operations (15 million shares outstanding, $10–11 million in net sales annually and losses of $400,000 in both 1969 and the first nine months of 1970).

eration of the delisting of Siboney stock.[3] Harding sought to enjoin AMEX from delisting securities until it adopted constitutionally mandated procedures. He also sought damages of $300 million representing the depreciation in value of 20 million shares of Siboney stock of at least $5 per share as a result of the delisting, trebled, plus costs and attorney fees.

The district court dismissed these claims. It held that since AMEX was incapable of delisting Siboney's common stock without an SEC order, a party aggrieved by the action must seek relief under 15 U.S.C.A. § 78y which provides, *inter alia,* that a party aggrieved by an SEC order in a proceeding to which the person is a party may obtain review of the order in the United States Court of Appeals to affirm, modify, and enforce or set aside the order, in whole or in part.

Harding's complaint and his brief on appeal make it clear, however, that he does not seek a relisting of Siboney stock or a review of the SEC order. What Harding seeks is damages from AMEX for its alleged violation of the antitrust laws, and an injunction against continued delisting of common stock by AMEX under 42 U.S.C.A. § 1988.

▬ We view the questions here as (1) whether the principles expressed in *Gordon v. New York Stock Exchange,* 1975, 422 U.S. 659, 95 S.Ct. 2598, 45 L.Ed.2d 463 (NYSE), and *United States v. Nation Association of Securities Dealers,* 1975, 422 U.S. 694, 95 S.Ct. 2427, 45 L.Ed.2d 486 (NASD), both decided after the district court rendered its opinion, apply to AMEX so that it has immunity under the antitrust laws when it suspends trading in and applies for the delisting of a company's common stock pursuant to a rule of the Exchange, and (2) whether there is a jurisdictional basis to grant an injunction under § 1988.

*Gordon* involved a challenge to the system of fixed commission rates utilized by the American and New York Stock Exchanges. Petitioner argued that fixed rates were a *per se* violation of the antitrust laws. The Court held that application of the antitrust laws with respect to fixing commission rates would unduly interfere with the operation of the Securities Exchange Act. Specifically, the Court looked to § 19(b) of the Act which gives the SEC direct regulatory power over exchange rules and practices with respect to "the fixing of reasonable rates of commission." The Court said:

> Not only was the SEC authorized to disapprove rules and practices concerning commission rates, but the agency also was permitted to require alteration or supplementation of the rules and practices when 'necessary or appropriate for the protection of investors or to insure fair dealings in securities traded in upon such exchange.' Since 1934 all rate changes have been brought to the attention of the SEC, and it has taken an active role in review of proposed rate changes during the last 15 years. Thus, rather than presenting a case of SEC impotence to affect application of exchange rules in particular circumstances, this case involves explicit statutory authorization for SEC review of all exchange rules and practices dealing with rates of commission and resultant SEC continuing activity.

*NYSE, supra,* 422 U.S., at 685, 95 S.Ct., at 2612.

The Court went on to say that the degree of scrutiny and approval by the SEC over fixed commission rates

> is not significantly different for our purposes here than an affirmative order to the exchanges to follow fixed rates. The United States, as *amicus curiae,* agrees that if the SEC 'were to order the exchanges to adhere to a fixed commission rate system of some

---

**3.** Harding complained about the lack of a hearing or a transcript, and the right to cross-examine staff and witnesses before the Committee on Securities. He also complained that Siboney was not permitted to appear before the Board of Governors.

kind, no antitrust liability could arise.' * * * We conclude that immunity should not rest on the existence of a formal order by the SEC, but that the actions taken by the SEC pursuant to § 19(b)(9), . . . are to be viewed as having an effect equivalent to that of a formal order.

*Id.* at 689, 95 S.Ct. at 2614, fn. 13.

In *NASD,* the Court held that certain vertical restrictions on secondary market transactions in mutual fund shares were not actionable under the Sherman Act because Congress "ha[d] vested in the SEC final authority to determine whether and to what extent they should be tolerated" under § 22(f) of The Investment Company Act. *NASD, supra,* 422 U.S. at 729–30, 95 S.Ct. at 2447. Section 22(f) authorized the restrictions provided that they conformed with the fund's registration statement and did not contravene any rules or regulations prescribed by the SEC in the interest of holders of mutual fund shares. The SEC had not issued any rules or regulations but rather had accepted the practices for over thirty years. This, the Court said, was not an "abdication of regulatory responsibilities" but rather "manifests an informed administrative judgment . . . that the contractual restrictions . . . were appropriate means for combating the problems of the industry" and was "precisely the kind of administrative oversight of private practices that Congress contemplated when it enacted § 22(f)." *Id.* at 728, 95 S.Ct. at 2447.

The Court further held that the alleged horizontal conspiracy to prevent the growth of a secondary dealer market and broker market in mutual fund shares escaped antitrust attack because of the pervasive supervisory authority

vested in the SEC to approve NASD's rules and, if SEC requests for a change are not complied with, to order them changed. *Id.* at 730–35, 95 S.Ct. 2427.[4]

While we are aware of the disfavor with which antitrust immunity is held in the law, *NYSE, supra,* 422 U.S. at 682, 95 S.Ct. 2598, the statutory scheme and SEC order approving the delisting compel us to conclude that AMEX's alleged violations are without the ambit of the antitrust laws.

Section 19(b) of the Securities Exchange Act authorizes the SEC to alter or supplement the rules of an exchange, if SEC requests for changes are not complied with, and the changes are necessary for the protection of investors or to insure fair dealing in securities traded on the exchange or to insure fair administration of the exchange, "in respect of such matters as . . . (3) the listing or striking from listing of any security." 15 U.S.C.A. § 78s(b). This is the same section which authorized the SEC to review the fixing of commission rates. *NYSE, supra.* Section 19(b) thus gives the SEC direct review over delisting activity. Cf. *Silver v. New York Stock Exchange,* 1963, 373 U.S. 341.

More persuasively, § 12(d) of the Exchange Act, 15 U.S.C.A. § 78*l*(d), provides that a security may be withdrawn from listing in accordance with the rules of the exchange only by application to the SEC and "upon such terms as the Commission may deem necessary to impose for the protection of investors."

SEC Rule 12(d)2–2 which implements § 12(d) provides that the SEC will grant the application on the date specified therein unless by written notices to the exchange it postpones the effective date of delisting for a period not more than 60 days thereafter,

---

**4.** *NASD* involved the Investment Company Act rather than the Securities Exchange Act, but the Court's discussion of antitrust immunity under § 22(f) is equally applicable to immunity under the Exchange Act. While *NASD* carved out a greater exemption under the antitrust laws for securities dealers because of the pervasive regulatory scheme than *Gordon* did for exchanges, *NASD, supra,* 422 U.S. at 736,

95 S.Ct. 2427 (White, J., dissenting, joined by Douglas, J., Brennan, J., and Marshall, J.), Note, "SEC Regulation as a Pervasive Regulatory Scheme—Implied Repeal of the Antitrust Laws with Respect to National Securities Exchanges and the NASD," 44 Ford.L.R. 355, 363, 367 (1975), the 1975 amendments to the Exchange Act may achieve parity in treatment, *Id.,* at 368–72.

"*Provided, however,* That the Commission, by written notice to the exchange on or before the effective date, may order a hearing to determine whether the application to strike the security from listing and registration has been made in accordance with the rules of the exchange, or what terms should be imposed by the Commission for the protection of investors."

17 CFR § 240.12d2–2(c) (Emphasis in original).

AMEX's rule governing delisting of securities selling at a low price for a substantial period of time has been in effect for many years. It is and has been subject to alteration and supplementation by the SEC under § 19(b) of the Exchange Act. Cf. *NASD, supra,* 422 U.S. at 728, 95 S.Ct. 2427. The delisting of Siboney's common stock was subject to the approval of the SEC under § 12(d) and a formal order of the SEC was issued to delist the stock under Rule 12(d)2–2. Cf. *NYSE, supra,* 422 U.S. at 689, 95 S.Ct. 2598, fn. 13. Immunity under the Sherman Act is necessary in this case to make the Exchange Act viable. Therefore, AMEX's activities are not actionable under the antitrust laws. *NYSE, supra, NSAD, supra.*

 Plaintiffs have also alleged a denial of due process in the suspension of trading in, and application for delisting of Siboney's common stock. They allege jurisdiction under 42 U.S.C.A. § 1988. Under 28 U.S.C.A. § 1343(4), a ·district court has jurisdiction to hear any civil action to recover damages under any "Act of Congress providing for the protection of civil rights." Section 1988 merely "instructs federal courts as to what law to apply in causes of action arising under federal civil rights acts." *Moor v. County of Alameda,* 1973, 411 U.S. 693, 703, 93 S.Ct. 1785, 36 L.Ed.2d 596. It does not create a federal cause of action for alleged deprivation of constitutional rights. *Id.* at 703–04, 93 S.Ct. 1785, 1792. Therefore, § 1343(4) jurisdiction does not exist and the claim was properly dismissed.[5]

The judgment of the district court is Affirmed.

---

5. We note that Siboney could have raised alleged due process violations in an appeal from the SEC delisting order under 15 U.S.C.A. § 78y. *Intercontinental Industries, Inc. v. American Stock Exchange,* 5 Cir. 1971, 452 F.2d 935, *cert. den.* 1972, 409 U.S. 842, 93 S.Ct. 41, 34 L.Ed.2d 81.