Mary M. WHITTEN et al.

v.

**PETROLEUM CLUB OF LAFAYETTE**
et al.

Civ. A. No. 800872.

United States District Court,
W. D. Louisiana,
Lafayette-Opelousas Division.

Feb. 13, 1981.

Colleen McDaniel, Lafayette, La., for plaintiffs.

John G. Torian, II, Lafayette, La., for defendants.

## RULING ON MOTION

SHAW, District Judge.

Plaintiffs are female persons employed in the petroleum industry who are excluded from membership in the Petroleum Club of Lafayette, Louisiana. Defendants are the Petroleum Club and several of its current and past members of the Board of Directors. Plaintiffs have filed a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on their behalf, and all oth-

er female persons employed in the petroleum industry who have been or will be excluded from service and membership, and seek declaratory and injunctive relief and damages. Plaintiffs originally claimed that defendants have violated their rights protected by 28 U.S.C. §§ 1343 and 1344, 42 U.S.C. § 1983, 42 U.S.C. §§ 1985(3), 1986 and 1988, 29 U.S.C. § 206, 42 U.S.C. §§ 2000a–c, et seq., the Fourteenth Amendment to the United States Constitution and Louisiana Constitution of 1974 Art. 1, § 12 and assert that declaratory relief is authorized by 28 U.S.C. §§ 2201 and 2202 and Rule 57, F.R.C.P.

Defendants, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, filed a Motion for Judgment on the Pleadings which shall be treated as one for summary judgment.

Plaintiffs have now refined and basically limited their claims against the defendants to violations of 42 U.S.C. § 1983 and 42 U.S.C. § 1985(3). The Court has jurisdiction under 28 U.S.C. § 1343.

### Background

The depositions, affidavits and exhibits filed herein make it clear that there is no genuine issue as to any material fact and that the case is ripe for disposition by summary judgment. The material facts show that the Petroleum Club of Lafayette is a tax-exempt, non-profit membership club, which provides dining and drinking facilities for its members and their guests, along with meeting rooms available by reservation for the use of members and their guests.

With certain exceptions not pertinent herein, the Petroleum Club has always prohibited all women from membership, including professionals who have business there, consistent with the purpose for which the club was formed, and is presently operating. Further, women are denied service in the main dining room within certain hours.

Some employers have attempted to pay for membership for plaintiffs as company fringe benefits to no avail. One plaintiff was actually accepted for membership on the mistaken belief that she was a man, and then her membership was revoked when the Board and membership discovered that she was a female.

Substantial dues, membership fees and entertainment expenses are "written off" by members or their companies each year. Approximately ninety (90%)[1] per cent of the memberships are corporate memberships. The Petroleum Club, for all practicable purposes, is totally dependent financially on these corporate memberships, and without them, the club would probably have to close its doors.

A great deal of business is carried on at the Petroleum Club. There is no doubt that women employed in the petroleum industries are at a distinct disadvantage in being denied the use of the facility and have suffered in the areas of career advancement, employment advantages, fringe benefits, and access to the market place, because that's where the action is and there is no substitute.

In early 1980, when the issue of membership of females surfaced, including two of the plaintiffs herein, the Board of Directors of the defendant met, discussed the matter, and voted to continue the "males only" policy.

### Section 1983

Plaintiffs have sued under 42 U.S.C. § 1983. Section 1983 was modeled on § 2 of the Civil Rights Act of 1866 and was enacted for the express purpose of enforcing the provisions of the Fourteenth Amendment. It provides:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person

---

1. Out of the 1,850 memberships in the Petroleum Club of Lafayette, 1,831 were purchased by corporations. This information was supplied voluntarily by defendants who contend the figures are based on outdated information and contend that there are today substantially less company maintained memberships.

within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. * * "

Since the Fourteenth Amendment applies only to state action, § 1983 only establishes a cause of action for deprivation under color of state law. This term may encompass acts by all of those "who carry a badge of authority of a state and represent it in some capacity, whether they act in accordance with their authority or misuse it." *Monroe v. Pape*, 365 U.S. 167, 172, 81 S.Ct. 473, 476, 5 L.Ed.2d 492 (1961). Therefore, it is necessary to determine the relationship, if any, between the state and the defendants.

State action was found lacking in a § 1983 complaint against a non-profit corporation that provided medical and hospitalization insurance to the general public of Eastern Pennsylvania, where the plaintiff contended that the defendants' enrollment and rate policies discriminated against married women. *Broderick v. Associated Hospital Service of Philadelphia*, 536 F.2d 1 (3rd Cir. 1976). Therein, there was no state involvement even though it was required by statute to approve Blue Cross and Blue Shield contracts and rates to be charged to subscribers. The enrollment practices of the defendants were determined solely by the defendants, and there was no evidence that the state "put its own weight" on the side of the privately initiated enrollment practice.

■ The evidence in the instant case confirms that the state disapproved of the discriminatory practices of the Petroleum Club when made aware of the situation and state disapproval of challenged practices cannot support a "state action" theory. *Girard v. 94th Street and Fifth Avenue Corporation*, 530 F.2d 66 (2nd Cir. 1976), cert. denied 425 U.S. 974, 96 S.Ct. 2173, 48 L.Ed.2d 798 (1976).

Plaintiffs claim that the issuance of a liquor license by the state to the Petroleum Club constitutes sufficient state action to involve the Fourteenth Amendment.

In *Moose Lodge No. 107 v. Irvis*, 407 U.S. 163, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1972), the Supreme Court held that Pennsylvania's extensive regulation of liquor traffic was not sufficient to implicate Pennsylvania in the discriminatory guest practices which were employed by the Lodge. The Court stated at Pages 176–177, 92 S.Ct. at 1973:

"However detailed this type of regulation may be in some particulars, it cannot be said to in any way foster or encourage racial discrimination. Nor can it be said to make the State in any realistic sense a partner or even a joint venturer in the club's enterprise. * * * "

In *Millenson v. New Hotel Monteleone, Inc.*, 475 F.2d 736 (5th Cir. 1973) cert. denied 414 U.S. 1011, 94 S.Ct. 376, 38 L.Ed.2d 250, a female plaintiff filed a Section 1983 action against the New Hotel Monteleone to enjoin its operation of a restaurant known as "The Men's Grill", and to declare its "males only" admissions policy unconstitutional as violative of the equal protection clause of the Fourteenth Amendment. The plaintiff contended that the various licenses issued to the Hotel by Louisiana so intertwined the policies of the Hotel with state authority that impermissible state action was present. Specifically, the plaintiff alleged that the Men's Grill had a liquor license as required by Title 26 of the Louisiana Revised Statutes, that the Hotel collected sales tax on all transactions in the grill as an agent of the State of Louisiana, as provided in Title 47 of the Louisiana Revised Statutes, and that the Hotel received rebates on such sales taxes pursuant to Section 56–43 of the New Orleans City Code. The Court's discussion is significant:

"Ms. Millenson contends that the admission policies of the grill are unconstitutional because they violate the equal protection clause of the fourteenth amendment. Of course for such a claim to withstand close judicial scrutiny, it is incumbent on the aggrieved party to prove that the actions complained of were taken under color of state law. To fulfill this assigned task Millenson contends

that the various licenses issued to the hotel by Louisiana so intertwine the policies of the hotel with state authority that impermissible state action is present. Accordingly, the dispositive issue in the instant case is whether the issuance of regulatory licenses to a public accommodation by a state will suffice to color the admission policies of the former with the authority and the involvement of the latter.

"For Millenson to succeed it is necessary for her to show that the state licensing system encourages, mandates, or affirmatively authorizes the admission policies of the grill. A cursory examination of these state licensing statutes' manifestly leads one to the conclusion that they are completely unrelated to the admission policies of the licensees.

"The impetus for the grill's admission policies originated with the hotel and not with the state. * * * "

■ In view of the above, it is apparent that the various licensing arrangements between the state and the Petroleum Club are insufficient to involve the state in the membership and service policies of the defendant, Petroleum Club.

■ Plaintiffs have shown that the State of Louisiana, through the Department of Natural Resources, Office of Conservation, has been holding official pre-hearing unitization conferences at the Petroleum Club of Lafayette, for a number of years and contend that this constitutes significant state action to support a § 1983 claim.

The evidence shows that no state official ever reserved the meeting rooms of the club, and that conferences are not held by the Office of Conservation but are *set* by private parties at a place of their own choosing, who intend to apply for a subsequent formal hearing before the Commissioner.

The Rules of Procedure for conducting hearings before the Commissioner of Conservation only require that pre-application conferences be held within the State of Louisiana, in a city reasonably convenient to the persons involved. The fact that the Commissioner of Conservation, after being made aware of the club's policy regarding membership of females, ordered that no official meetings were to be scheduled at facilities which are not open to all citizens alike, does not supply the necessary ingredients to create state action.

■ The fact that the club enjoys a tax-exempt status does not constitute a mark of government approval or encouragement of entities that might engage in private discrimination. *New York City Jaycees v. United States Jaycees*, 512 F.2d 856 (2nd Cir. 1975) involved the practice of a national men's service organization of excluding females from membership. The following facts were argued by the plaintiff to constitute sufficient government involvement so as to render the private organization's action that of the government: (1) The defendant received federal funds in excess of one million dollars, or 31.4% of the total annual budget; (2) The defendant enjoyed tax-exempt status; and (3) The defendant performs many public and civic functions.

In citing *Moose Lodge*, supra, and *Jackson v. Metropolitan Edison Company*, 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974), the Court held that the mere existence of government ties to a private organization is insufficient to support a finding of state action and that the state must have itself become involved directly in the questioned activity. Since the government was not shown to have been involved *in the adoption or enforcement* of the organization's male-only policy, insufficient nexus was present.

In *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978), the Supreme Court stated:

"Our cases state, 'that a State is responsible for the ... act of a private party when the State by its law, has compelled the act.' *Adickes*, supra, 398 U.S. 144 at 170, 90 S.Ct. 1598 at 1615, 26 L.Ed.2d 142. This Court, however has never held that a State's mere acquiescence in a private action converts that action into that of the State. * * * "

In *White v. Scrivner Corporation*, 594 F.2d 140 (5th Cir. 1979), the Court rejected plaintiffs' § 1983 arguments where plaintiffs were detained as suspected shoplifters by employees of the defendant food store. Plaintiffs contended that state action was present since the defendants' employees detained them and searched their purses, and were acting under a state statute permitting detention of suspected shoplifters. In finding that these arguments were governed by *Flagg Bros.*, supra, the Court stated that, "Absent some compulsion or some overt state involvement, no state action can be found because of the mere existence of the statute.", at Page 143. For other recent Fifth Circuit cases rejecting state action arguments, see *Berman v. Florida Medical Center, Inc.*, 600 F.2d 466 (5th Cir. 1979); *Harris v. Hubbert*, 588 F.2d 167 (5th Cir. 1979).

■ The plaintiffs' theory that the Petroleum Club serves a public function has been rejected by the Supreme Court in *Flagg Bros.*, and *Jackson v. Metropolitan Edison Company*, supra, on the basis that the state had not put its weight on the side of the proposed practice. Unless and until state action significantly enters the picture on the side of impermissibly discriminatory results, the policies of a genuinely private club can furnish "no grist for the judicial mill". *Golden v. Biscayne Bay Yacht Club*, 530 F.2d 16 (5th Cir. 1976) cert. denied 429 U.S. 872, 97 S.Ct. 186, 50 L.Ed.2d 152.

It is clear that under the facts in the instant case, the private conduct of the Petroleum Club cannot be treated as if it were governmental conduct and the plaintiffs do not disclose any factual allegations needed to sustain a cause of action under § 1983.

## Section 1985(3)

■ Section 1985(3)[2] provides a federal remedy for certain private conspiracies. *Griffin v. Breckenridge*, 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971). In *Griffin*, the Court set forth the essential elements of a cause of action.[3] Although conspiracies by private parties resulting in sex discrimination have been held actionable under 1985(3),[4] the Fifth Circuit has not decided whether only racial bias would activate this section. *McLellan v. Mississippi Power & Light Co.*, 545 F.2d 919 (5th Cir. 1977).

■ Assuming that sex discrimination constitutes such an animus class within the purview of § 1985(3), the next question is whether individual agents or officers of a single corporate entity can form a conspiracy within the meaning of § 1985(3).

2. The statute provides in part:

"If two or more persons in any State or Territory conspire ... for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; ... in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators."

3. The Supreme Court, in *Griffin*, elucidated the four elements a plaintiff must allege to state successfully a cause of action under this section:

(1) the defendants must conspire
(2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and
(3) the defendants must act in furtherance of the object of the conspiracy, whereby
(4) one was (a) injured in his person or property or (b) deprived of having and exercising any right or privilege of a citizen of the United States.

4. *Curran v. Portland Superintending School Committee*, 435 F.Supp. 1063 (D.Me.1977); *Fannie v. Chamberlain Manufacturing Corp.*, 445 F.Supp. 65, 77 (W.D.Pa.1977); *Hodgin v. Jefferson*, 447 F.Supp. 804 (D.Md.1978).

Again, the Courts are divided on this issue.[5] In this Court's opinion, the weight of authority would indicate that a defendant cannot conspire with itself in violation of the statute.[6] Further, the fact that two or more agents or employees of a single business entity of the size and structure involved herein participated in a decision to deny the plaintiffs certain rights would not fall within the contemplation of § 1985(3).

▮▮▮ While it is well settled that the Bill of Rights and the Fourteenth Amendment are not directed against the actions of individuals, it must not be assumed that a citizen enjoys no protection against the invasion of his civil rights by private persons. The scope of federal power in this respect is limited. If private persons engage in purely private acts of discrimination against women, they do not violate the Equal Protection Clause of the Fourteenth Amendment. *Shelley v. Kraemer*, 334 U.S. 1, 13, 68 S.Ct. 836, 92 L.Ed. 1161 (1948).

In the recent Supreme Court decision of *Great American Federal Savings and Loan Association, et al v. Novotny*, 442 U.S. 366, 99 S.Ct. 2345, 60 L.Ed.2d 957 (1979), the Court held that § 1985(3) may not be invoked to redress violations of Title VII. The Court reaffirmed *Griffin v. Breckenridge*, supra, to the effect that § 1985(3) did provide a cause of action for damages caused by purely private conspiracies, but provided no substantive rights itself. It merely provides a remedy for violations of the rights it designates. In Justice Powell's concurring opinion, he stated that § 1985(3)'s reach is limited to conspiracies to violate those fundamental rights derived from the Constitution, at Page 380:

"By contrast, this Court has never held that the right to any particular private employment is a 'right of national citizenship,' or derives from any other right created by the Constitution."

▮▮▮ Justice Powell made it clear that this Civil War era statute was intended to provide a remedy only for conspiracies to violate fundamental rights derived from the Constitution thereby casting serious doubt as to the validity of those cases which have allowed the series of laws passed by Congress this century to be raised in a 1985(3) suit. For instance, *Hodgin v. Jefferson*, 447 F.Supp. 804 (D.Md.1978) which allowed claims based on the Equal Pay Act, 29 U.S.C. § 206(d) (1963) to be raised in a § 1985(3) suit, apparently is no longer viable.

Justice Stevens also concurring in *Novotny*, stated at Page 381, 99 S.Ct. at 2354:

"Sections 1983 and 1985(c) of Title 42 of the United States Code are the surviving direct descendants of §§ 1 and 2 of the Civil Rights Act of 1871. 17 Stat. 13. Neither of these sections created any substantive rights. Earlier this Term we squarely held that § 1983 merely provides a remedy for certain violations of certain federal rights, and today the Court unequivocally holds that § 1985(c) 'provides no substantive rights itself; it merely provides a remedy for violation of the rights it designates.'"

\* \* \* \* \* \*

"Some privileges and immunities of citizenship, such as the right to engage in interstate travel and the right to be free of the badges of slavery, are protected by the Constitution against interference by private action, as well as impairment by state action. Private conspiracies to deprive individuals of these rights are, as this Court held in *Griffin v. Brecken-*

---

5. Compare *Dombrowski v. Dowling*, 459 F.2d 190 (7th Cir. 1972); *Girard v. 94th & Fifth Avenue Corp.*, 530 F.2d 66 (2d Cir.) *cert. denied*, 425 U.S. 974, 96 S.Ct. 2173, 48 L.Ed.2d 798 (1976); *Jones v. Tennessee Eastman Co.*, 397 F.Supp. 815 (E.D.Tenn.1974), *aff'd*, 519 F.2d 1402 (5th Cir. 1975) (no conspiracy), with *Hodgin v. Jefferson*, 447 F.Supp. 804 (D.Md. 1978); *Dupree v. Hertz Corp.*, 419 F.Supp. 764 (E.D.Pa.1976) (conspiracy).

6. In *Nelson Radio and Supply Co. v. Motorola, Inc.*, 200 F.2d 911 (5th Cir. 1952), the Court stated at page 914, "A corporation cannot conspire with itself any more than a private individual can, and it is the general rule that the acts of the agents are the acts of the corporation."

*ridge,* 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338, actionable under § 1985(c) without regard to any state involvement.

"Other privileges and immunities of citizenship such as the right to due process of law and the right to the equal protection of the laws are protected by the Constitution only against state action. * * * "

\* \* \* \* \* \*

"If, however, private persons engage in purely private acts of discrimination—for example, if they discriminate against women or against lawyers with a criminal practice, see *Dombrowski v. Dowling,* 459 F.2d 190, 194–196—they do not violate the Equal Protection Clause of the Fourteenth Amendment. *The rights secured by the Equal Protection and Due Process Clauses of the Fourteenth Amendment are rights to protection against unequal or unfair treatment by the State, not by private parties.* Thus, while § 1985(c) does not require that a defendant act under color of state law, there still can be no claim for relief based on a violation of the Fourteenth Amendment if there has been no involvement by the State. The requirement of state action, in this context, is no more than a requirement that there be a constitutional violation.

"Here, there is no claim of such a violation. *Private discrimination on the basis of sex is not prohibited by the Constitution.* The right to be free of sex discrimination by other private parties is a statutory right that was created almost a century after § 1985(c) was enacted. Because I do not believe that statute was intended to provide a remedy for the violation of statutory rights—let alone rights created by statutes that had not yet been enacted—I agree with the Court's conclusion that it does not provide respondent redress for injuries caused by private conspiracies to discriminate on the basis of sex." (Emphasis ours)

Plaintiffs may have Title VII rights against their employers but they are not being asserted. Further, whether or not the fact that employers of the plaintiffs who purchase memberships in the defendant club for their male employees to the exclusion of their female employees constitutes a violation by the employers of the Equal Pay Act, 29 U.S.C. § 206,[7] is not before the Court. It is also clear under *Novotny* that § 1985(3) may not be invoked against defendants to redress a violation of § 206, which was added in 1963 to the Fair Labor Standards Act of 1938. Therefore, the plaintiffs have no standing to bring this suit under § 1985(3).

### Remaining Claims

Plaintiffs' claim under 42 U.S.C. § 1986 must be rejected because no valid claim can be maintained under this section unless a valid Section 1985(3) claim has been asserted. *Hamilton v. Chaffin,* 506 F.2d 904 (5th Cir. 1975); *Taylor v. Nichols,* 558 F.2d 561 (10th Cir. 1977).

Plaintiffs also rely on 42 U.S.C. § 1988 as a basis for jurisdiction. This section is merely procedural in nature and clearly does not create an independent cause of action. The statute provides for attorney fees in certain civil rights cases, as well as providing that the common law and laws of the various states shall apply in civil rights cases where necessary to furnish suitable remedies. The application of this provision is dependent upon plaintiffs having stated a claim upon which relief can be granted under the other federal laws cited by plaintiffs. *Moor v. County of Alameda,* 411 U.S. 693, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973); *Harding v. American Stock Exchange, Inc.,* 527 F.2d 1366 (5th Cir. 1976).

Plaintiffs further claim the benefit of 42 U.S.C. § 2000a–e commonly referred to as the Civil Rights Act of 1964. Section 2000a, the Public Accommodations Title of the Civil Rights Act, does not proscribe discrimination on the basis of sex. *Seiden-*

---

**7.** This provision provides that employers will provide the minimum wage to covered employees and that they shall not discriminate be-

tween employees in the payment of wages on the basis of sex.

*berg v. McSorleys' Old Ale House,* 308 F.Supp. 1253, motion granted, 317 F.Supp. 593 (1970).

In *DeCrow v. Hotel Syracuse Corporation,* 288 F.Supp. 530 (N.D.N.Y.1968), the Court stated that although full and equal enjoyment of public accommodations without discrimination on account of race, color, religion or national origin, including the right to be served at a bar, has been guaranteed by Congress, no such guarantee has been made on account of sex.[8]

Section 2000b allows the Attorney General of the United States to institute a civil action in Federal Court when race, color, religion or national origin involve a public facility owned, operated or managed by or on behalf of any state or subdivision thereof. Like Section 2000a, this section is relegated to discrimination on account of race, color, religion or national origin and does not include sex discrimination.

Section 2000c prohibits discrimination in *"public education"* and the plaintiffs' complaint contains no allegations that could arguably bring it within the coverage of this provision.

Section 2000d, like Section 2000a and c, proscribe only discrimination based on race, color, religion or national origin, and is inapplicable to sex discrimination.

Section 2000e prohibits discrimination in employment and is also inapplicable to plaintiffs' claims.

The plaintiffs' final claim for relief under Article 1, Section 12 of the Louisiana Constitution will be DENIED, since no basis for this Court's exercise of pendent jurisdiction over a state claim exists.

It may appear that the paths taken by the plaintiffs herein have led to a dead end. But along the way, they have gathered many friends. It is hoped that when the dust settles, perhaps the defendants may reexamine their positions in light of the plaintiffs' reluctance to pursue other available avenues to achieve their goals or the

possibility that employers may voluntarily discontinue corporate memberships in the Petroleum Club in light of its membership policies.

The defendants' Motion for Summary Judgment is GRANTED.

---

8. Because sex discrimination has been excluded as a basis for relief in the Public Accommodations Title of the Civil Rights Act of 1964, the status of the Petroleum Club as a "private membership club" within the express exemption from that law is immaterial.