Delfina **LOPEZ ROSARIO,**
et al., Plaintiffs,

v.

The **POLICE DEPARTMENT,**
et al., Defendants.

**No. Civ. 00–1806 JP.**

United States District Court,
D. Puerto Rico.

Dec. 11, 2000.

Ivonne González–Morales, Old San Juan, PR, for plaintiffs.

José R. Cintrón–Rodríguez, Department of Justice of P.R., Federal Litigation Division, San Juan, PR, for Defendants.

## OPINION AND ORDER

PIERAS, Senior District Judge.

### I. INTRODUCTION

Before the Court is the Motion to Dismiss under FRCP 12(b)(1) & (6) filed by Co-defendants the Puerto Rico Police Department, the Security Commission, the Central Office of Labor Advice and Human Resources Administration (OCALARH), and Police Superintendent Pedro Toledo in his official capacity (**docket No. 3**), Plain-

tiffs' Opposition thereto (docket No. 7), and the Motion to Dismiss Under FRCP 12(b)(6) filed by Co-defendants Pedro Toledo and Maribel Hernández, in their personal capacities (**docket No. 10**), to which Plaintiffs filed no opposition.

This is an action brought by sixty-five (65) civilian employees of the Puerto Rico Police Department and the Security Commission. Defendants in this action are the Puerto Rico Police Department, the Security Commission of Puerto Rico, the Central Office of Labor Advice and Human Resources Administration (OCALARH), Police Superintendent Pedro Toledo in his official and personal capacities, and Maribel Hernández, Director of OCALARH, in her personal capacity. Plaintiffs seek money damages, declaratory and injunctive relief for alleged violations of the Fair Labor Standards Act, 29 U.S.C. §§ 201–219; the Equal Pay Act, 29 U.S.C. § 206; 18 U.S.C. §§ 1981, 1983, and 1985; and the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution. Plaintiffs also invoke the Court's pendent jurisdiction to assert claims under Puerto Rico law. Defendants move for dismissal of the case under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, arguing that Plaintiffs' claims under the Fair Labor Standards Act (FLSA) and the Equal Pay Act (EPA) are barred by the Eleventh Amendment to the U.S. Constitution, and that Plaintiffs have otherwise failed to state a claim upon which relief may be granted.

## II. FACTUAL ALLEGATIONS

Plaintiffs claim to occupy diverse positions within the Police Department and Security Commission, including Administrative Assistant I–III, Clerk I–IV, Executive Office I & IV, Executive Secretary, Fingerprint Technician I–IV, Office Clerk I–IV, Personnel Technician I–IV, and Statistics Assistant. Geographically, all but one of the Plaintiffs are alleged to work in Hato Rey, Puerto Rico. One Plaintiff is alleged to work in Aguadilla. The schedule attached to the Complaint indicates that forty-two (42) of the Plaintiffs are female, and twenty-three (23) are male.

The Complaint asserts that Plaintiffs have performed work for which they have not been adequately compensated in accordance with Puerto Rico and Federal laws. Plaintiffs claim that Defendants (1) prepared and implemented a new, lower pay scale prior to the FLSA effective date vis-à-vis States and municipalities, as part of a scheme to reduce the economic impact of the FLSA; (2) have maintained a discriminatory compensation system by failing and refusing to pay Plaintiffs salaries consistent with the evaluated worth of the duties they perform; (3) have failed and refused to pay Plaintiffs' previously-earned seniority, legislative and/or merit wage increases, bonuses, and other benefits which had accrued to them and eliminated Plaintiffs' right to such wage increases, bonuses and benefits; (4) have failed and refused to adjust Plaintiffs' schedules to reduce the number of overtime hours worked; and (5) have failed to adjust the Police Department and Security Commission civilian pay scale upwards in light of increases in the minimum wage.

Plaintiffs claim to be covered by the FLSA and further claim that their employers, the Police Department and Security Commission, are political subdivisions of the Commonwealth of Puerto Rico and public agencies within the meaning of the FLSA. Co-defendant OCALARH is alleged to be responsible for supervising the administration of the Defendant employers' compensation schedules, and as such should be considered an "employer" within the meaning of the FLSA. Plaintiffs contend that Co-defendant Hernández, as Director of OCALARH, was responsible for issuing the applicable norms pursuant to which the compensation schedules were approved and maintained by the Defendant employers, and in that capacity continued a pattern or practice of wage discrimination by failing to promulgate, amend, or repeal regulations as necessary

to implement minimum wage legislation and to guarantee that employees of the Police Department and Security Commission were being adequately compensated.

## III. LEGAL STANDARD

In adjudicating a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must accept as true "all well-pleaded factual averments and indulg[e] all reasonable inferences in the plaintiff's favor." *Aulson v. Blanchard,* 83 F.3d 1, 3 (1st Cir.1996) (citations omitted). "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *see also Miranda v. Ponce Fed. Bank,* 948 F.2d 41 (1st Cir.1991). Although there is a low threshold for stating a claim, the pleading requirement is "not entirely a toothless tiger." *Doyle v. Hasbro, Inc.,* 103 F.3d 186, 190 (1st Cir.1996) (quoting *The Dartmouth Review v. Dartmouth College,* 889 F.2d 13, 16 (1st Cir.1989)). A complaint must set forth "factual allegations, either direct or inferential, regarding each material element necessary to sustain recovery under some actionable theory." *Romero–Barcelo v. Hernandez–Agosto,* 75 F.3d 23, 28 n. 2 (1st Cir.1996) (quoting *Gooley v. Mobil Oil Corp.,* 851 F.2d 513, 514 (1st Cir.1988)). For the purposes of this motion, therefore, all factual allegations in the Complaint will be accepted as true and viewed in the light most favorable to Plaintiffs.

## IV. DISCUSSION

### A. Fair Labor Standards Act

■ Defendants argue that Plaintiffs' FLSA claims are barred by the Eleventh Amendment. The Eleventh Amendment bars suits for money damages brought in federal court against any unconsenting State, unless Congress unequivocally expresses its intent to abrogate a State's sovereign immunity pursuant to a valid exercise of congressional power. *See Green v. Mansour,* 474 U.S. 64, 67, 106 S.Ct. 423, 425–26, 88 L.Ed.2d 371 (1985). Puerto Rico is treated as a State for Eleventh Amendment purposes. *See Jusino Mercado v. Commonwealth of Puerto Rico,* 214 F.3d 34, 39 (1st Cir.2000); *Ortiz–Feliciano v. Toledo–Davila,* 175 F.3d 37, 39 (1st Cir.1999). Eleventh Amendment immunity extends to suits against State officers sued in their official capacity. *See Kentucky v. Graham,* 473 U.S. 159, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985); *see also Ford Motor Co. v. Department of the Treasury,* 323 U.S. 459, 464, 65 S.Ct. 347, 350, 89 L.Ed. 389 (1945).

■ In *Seminole Tribe of Florida v. Florida,* 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996), the U.S. Supreme Court held that Congress possesses the authority to abrogate a State's Eleventh Amendment immunity pursuant to its enforcement power under § 5 of the Fourteenth Amendment, but not under the Commerce Clause. Thereafter, the First Circuit found that private suits initiated against a State under the FLSA were foreclosed by the Supreme Court's pronouncements in *Seminole Tribe. See Mills v. Maine,* 118 F.3d 37 (1st Cir.1997); *cf. Alden v. Maine,* 527 U.S. 706, 119 S.Ct. 2240, 144 L.Ed.2d 636 (1999) (holding that Constitution bars individuals actions against a State to enforce FLSA when brought in a State's courts over its objection). And recently, the Circuit clarified in that notwithstanding Congress's plenary powers over territories and possessions, the government of Puerto Rico, like the fifty States, is immune from a federal damages action brought by its employees under the FLSA. *See Jusino Mercado,* 214 F.3d at 36.

■ Plaintiffs do not dispute that Co-defendants the Puerto Rico Police Department, the Security Commission, and OCA-LARH are government agencies, instrumentalities, or "arms of the state." As

such, they are protected against individual FLSA suits for money damages by Eleventh Amendment immunity. *See Mills,* 118 F.3d at 55; *see also Reyes v. Supervisor of Drug Enforcement Admin.,* 834 F.2d 1093, 1097–98 (1st Cir.1987); *Vega Castro,* 43 F.Supp.2d at 190–91; *Suarez Cestero v. Pagan Rosa,* 996 F.Supp. 133, 142–43 (D.Puerto Rico 1998). The FLSA claim for damages against Pedro Toledo in his official capacity, brought under section 1983, is similarly precluded by the Eleventh Amendment. *See Reyes,* 834 F.2d at 1097–98. To the extent that Plaintiffs contend that they may obtain monetary relief against Co-defendants Toledo and Hernández in their individual capacities because they were acting outside the scope of their duties by refusing to actualize pay scales and to pay overtime wages, this argument does not circumvent the Eleventh Amendment bar. The conduct complained of "is not personal, and money damages for wages due would be paid out of the state treasury regardless of whether the officials were acting in accord with statutory duties." *Hale v. State of Ariz.,* 993 F.2d 1387, 1399 (9th Cir.1993) (en banc) (citing *Edelman v. Jordan,* 415 U.S. 651, 653, 677, 94 S.Ct. 1347, 1351, 1362, 39 L.Ed.2d 662 (1974)).

■ Plaintiffs argue that notwithstanding the Eleventh Amendment bar to suits for money damages, they are entitled to pursue their FLSA claims for prospective injunctive relief and declaratory judgment against Toledo in his official capacity pursuant to *Ex parte Young.*[1] In suits against state officials, the courts have found jurisdiction to exist "when that suit seeks only prospective injunctive relief in order to 'end a continuing violation of federal law.'" *Seminole Tribe,* 517 U.S. at 73, 116 S.Ct. at 1132 (quoting *Mansour,* 474 U.S. at 68, 106 S.Ct. at 426). In this case, however, although Plaintiffs have alleged a continu-

ing violation, "the FLSA only authorizes the Secretary of Labor to seek injunctive relief, limiting employees to suits for unpaid wages and liquidated damages." *Mills,* 118 F.3d at 55; *see also Seminole Tribe,* 517 U.S. at 74, 116 S.Ct. at 1132 ("[W]here Congress has prescribed a detailed remedial scheme for the enforcement against a State of a statutorily created right, a court should hesitate before casting aside those limitations and permitting an action against a state officer based upon Ex parte Young."); *Vega Castro,* 43 F.Supp.2d at 190 ("[T]he FLSA permits an action seeking injunctive relief to be maintained only by the Secretary of the United States Department of Labor.") For this reason, Plaintiffs may not bring a cause of action under the FLSA for injunctive relief.

■ Declaratory relief pursuant to the Declaratory Judgment Act of 1934, 28 U.S.C. § 2201, may be available in certain circumstances, even where an injunction is not. In this case, however, it would serve the purpose of asserting *res judicata* in state court proceedings. *See Mansour,* 474 U.S. at 73, 106 S.Ct. at 428 (finding that declaratory judgment unavailable when result would be an "end run" around the Court's Eleventh Amendment jurisprudence); *Mills,* 118 F.3d at 55. For this reason, the Court holds that Plaintiffs may not assert a declaratory judgment action against Toledo in his official capacity. *See Wilton v. Seven Falls Co.,* 515 U.S. 277, 287, 115 S.Ct. 2137, 2143, 132 L.Ed.2d 214 (1995) (explaining that Declaratory Judgment Act, "confers a discretion on the courts rather than an absolute right upon the litigant") (citing *Public Serv. Comm'n of Utah v. Wycoff Co.,* 344 U.S. 237, 241, 73 S.Ct. 236, 239, 97 L.Ed. 291 (1952)); *see also Ernst & Young v. Depositors Eco-*

---

1. Plaintiffs also assert that injunctive relief is available against Hernández in her official capacity. Because Plaintiffs sued Hernández only in her personal capacity, however, the Court will address the argument solely with respect to Toledo, but with the understanding that the Court's analysis would apply with equal force to Hernández had she been brought into this action in her official capacity.

*nomic Protection Corp.*, 45 F.3d 530, 534 (1st Cir.1995).

### B. Equal Pay Act

■ Defendants move for the dismissal of Plaintiffs' Equal Pay Act (EPA) claim, arguing that because the EPA was passed as an amendment to the FLSA, the claims under the EPA are barred by the Eleventh Amendment for the same reasons expressed by this Circuit in *Mills* and *Jusino Mercado*. Plaintiffs point out, however, and this Court agrees, that the EPA's passage as an amendment to the FLSA does not lead inexorably to the conclusion that Congress derived its authority for the enactment of the EPA from the Commerce Clause, as it did for the FLSA. Rather, the inquiry into the source of congressional authority for a legislative enactment, and in particular into whether that authority flows from § 5, looks at whether the enactment is " 'plainly adapted to [the] end' of enforcing the Equal Protection Clause and 'is not prohibited by but is consistent with the letter and spirit of the constitution,' regardless of whether the practices outlawed by Congress in themselves violated the Equal Protection Clause." *City of Rome v. United States*, 446 U.S. 156, 176, 100 S.Ct. 1548, 1561, 64 L.Ed.2d 119 (1980) (quoting *Katzenbach v. Morgan*, 384 U.S. 641, 651, 86 S.Ct. 1717, 1724, 16 L.Ed.2d 828 (1966)). In fact, the First Circuit has distinguished the source of congressional authority for FLSA's wage and hour provisions from the EPA, holding that the legislation enacted by Congress to make the Equal Pay Act applicable to the States was a "legitimate exercise of congressional authority to adopt legislation enforcing the fourteenth amendment's guaranty of equal protection of the law." *New Hampshire Dept. of Employment Sec. v. Marshall*, 616 F.2d 240, 247 (1st Cir.1980); *see also Timmer v. Michigan Dept. of Commerce*, 104 F.3d 833, 839 & n. 8 (6th Cir.1997) ("[T]he Equal Pay Act is an anti-discrimination measure and as such ... it should be viewed as an exercise of Congress' power to adopt legislation enforcing the Fourteenth Amendment's guarantees of equal protection of the law."); *cf. Corning Glass Works v. Brennan*, 417 U.S. 188, 195, 94 S.Ct. 2223, 2228, 41 L.Ed.2d 1 (1974) ("Congress' purpose in enacting the Equal Pay Act was to remedy what was perceived to be a serious and endemic problem of employment discrimination in private industry—the fact that the wage structure of 'many segments of American industry has been based on an ancient but outmoded belief that a man, because of his role in society, should be paid more than a woman even though his duties are the same.' ") (quoting S.Rep. No. 176, 88th Cong., 1st Sess., 1 (1963)). This Circuit's finding that Congress enacted the EPA pursuant to its powers under § 5 of the Fourteenth Amendment sweeps away Defendants' argument that the Eleventh Amendment serves as a jurisdictional bar to Plaintiffs' EPA claim.

Nevertheless, the Court finds Plaintiffs' EPA cause of action subject to dismissal on other grounds. The EPA provides that no employer shall discriminate between employees "at a rate less than the rate at which he pays wages to employees of the opposite sex ... for equal work on jobs the performance of which requires equal skill, effort and responsibility, and which are performed under similar working conditions." 29 U.S.C. § 206(d)(1). A plaintiff asserting an EPA claim must make a prima facie showing "that the employer paid different wages to an employee of the opposite sex for substantially equal work." *Byrd v. Ronayne*, 61 F.3d 1026, 1033 (1st Cir.1995) (citing *Corning Glass Works v. Brennan*, 417 U.S. 188, 195, 94 S.Ct. 2223, 2228, 41 L.Ed.2d 1 (1974)). To make this showing, the plaintiff must allege that "*(i) the employer pays different wages to employees of the opposite sex;* (ii) the employees ... perform equal work on jobs requiring equal skill, effort, responsibility; and (iii) the jobs are performed under similar working conditions." *Maldonado–Cordero v. AT & T*, 73 F.Supp.2d 177, 190

(D.Puerto Rico 1999) (Pieras, J.) (emphasis added); *Mullenix v. Forsyth Dental Infirmary for Children*, 965 F.Supp. 120, 139 (D.Mass.1996). Once a plaintiff establishes a prima facie case, the burden shifts to the employer to show that the differential is justified under one of the EPA's four exceptions.[2] *See Brennan*, 417 U.S. at 196, 94 S.Ct. at 2229.

▮ Here, however, Plaintiffs fail to allege the first and most basic element of a prima facie EPA claim: that the Defendant employers pay different wages to employees of the opposite sex. It is uncontested that of the sixty-five (65) Plaintiffs, approximately one-third are male. The Complaint does not distinguish among male and female Plaintiffs, but rather asserts a cause of action in the name of all Plaintiffs, as civilian employees of the Puerto Rico Police Department and Security Commission. Although the Complaint purports to assert a claim under the EPA, the allegations proffered in support of that claim pertain not to the payment of different wages to members of the opposite sex, but rather to the ostensibly unfairly low pay scale at the Police Department and Security Commission. Given that the Complaint fails to articulate a claim under the EPA, Plaintiffs' cause of action for alleged equal pay violations must be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

### C. Equal Protection Clause of the Fourteenth Amendment

Plaintiffs assert that Co-defendants Toledo and Hernández violated the Equal Protection Clause by subjecting Plaintiffs and other similarly situated employees to discriminatory wage practices. The Fourteenth Amendment, through the Equal Protection Clause, prohibits state action that treats those who are similarly situated in a differential manner. *See City of Cle-*

*burne, Texas v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985). When state action distinguishes between two similarly situated groups, the distinctions it makes are subject to scrutiny under the Equal Protection Clause. "Such scrutiny is normally of the rational basis variety unless the distinction involves a suspect classification or burdens a fundamental right." *LCM Enterprises, Inc. v. Town of Dartmouth*, 14 F.3d 675, 679 (1st Cir.1994) (citing *Nordlinger v. Hahn*, 505 U.S. 1, 112 S.Ct. 2326, 2331–32, 120 L.Ed.2d 1 (1992)).

As the U.S. Supreme Court recently observed, "[t]he rationality commanded by the Equal Protection Clause does not require States to match [non-suspect] distinctions, and the legitimate interests they serve, with razorlike precision." *Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 120 S.Ct. 631, 646, 145 L.Ed.2d 522 (2000). Rather, the courts "will not overturn such [government action] unless the varying treatment of different groups or persons is so unrelated to the achievement of any combination of legitimate purposes that we can only conclude that the [government's] actions were irrational." *Id.* (citing *Vance v. Bradley*, 440 U.S. 93, 97, 99 S.Ct. 939, 943, 59 L.Ed.2d 171 (1979)). This level of scrutiny can be contrasted with a situation where a State discriminates on the basis of race or gender, in which case the courts "require a tighter fit between the discriminatory means and the legitimate ends they serve." *Id.* (citing *Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 227, 115 S.Ct. 2097, 132 L.Ed.2d 158 (1995) ("[Racial] classifications are constitutional only if they are narrowly tailored measures that further compelling governmental interests"); *Mississippi Univ. for Women v. Hogan*, 458 U.S. 718, 724, 102 S.Ct. 3331, 73 L.Ed.2d 1090 (1982) (holding that gender classifications are constitutional only if they serve "important governmental objec-

---

**2.** The four exceptions under the EPA are as follows: "where different payment to employees of opposite sexes is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex." *Brennan*, 417 U.S. at 196, 94 S.Ct. at 2229.

tives and ... the discriminatory means employed are substantially related to the achievement of those objectives")).

The touchstone of equal protection analysis is differential treatment of similarly situated people. Thus, the inquiry presupposes two classes of individuals, both of which are similarly situated, and governmental action treating one class differently than the other. Different treatment of a class of even one individual may be sufficient to state a claim under the Equal Protection Clause. *See Village of Willowbrook v. Olech,* 528 U.S. 562, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000) (per curiam) (holding that homeowner could assert equal protection claim as class of one against Defendant municipality where Defendant intentionally demanded a 33–foot easement as a condition of connecting plaintiff's property to the municipal water supply where it required only a 15–foot easement from other similarly situated property owners).

In this case, Plaintiffs, alleged to be a class of sixty-five civilian employees of the Puerto Rico Police Department and the Security Commission, neglect to allege a group against which to compare the government's treatment of Plaintiffs. In other words, although the Complaint states that Plaintiffs constitute a class of similarly situated individuals treated by government actors in a certain manner, it fails to assert that another group of individuals sharing similar characteristics was treated differently. The Complaint, therefore, fails to state a claim under the Equal Protection Clause. *See, e.g., Joost v. Cornell Corrections, Inc.,* No. 97–512T, 1998 WL 939531, *4 (D.R.I.1998) (dismissing equal protection claim where plaintiff failed to allege that defendants created two or more classifications of similarly situated individuals who were treated differently); *Parker v. Wakelin,* 882 F.Supp. 1131, 1139 (D.Maine 1995) (same); *Koelsch v. Town of Amesbury,* 851 F.Supp. 497, 501 (D.Mass.1994) (no equal protection claim where plaintiff did not allege that

employees who received better treatment were similarly situated).

### D. Section 1981

Plaintiffs have also failed to state a cause of action under 42 U.S.C. § 1981. Section 1981(a) reads as follows:

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981(a). Insofar as it deals with contracts, section 1981 "declares the personal right to make and enforce contracts, a right, as the section has been construed, that may not be interfered with on racial grounds. The provision asserts, in effect, that competence and capacity to contract shall not depend upon race." *Goodman v. Lukens Steel Co.,* 482 U.S. 656, 661, 107 S.Ct. 2617, 2621, 96 L.Ed.2d 572 (1987). This statute is directed solely at discrimination based on race. *See Danco, Inc. v. Wal–Mart Stores, Inc.,* 178 F.3d 8, 13 (1st Cir.1999) ("[S]ection 1981 protects only certain specified rights, including the right to make and enforce contracts, and it protects them only against racial discrimination.") *see also The Dartmouth Review v. Dartmouth College,* 889 F.2d 13, 17 (1st Cir.1989). The Complaint contains no allegations relating to discrimination based on race. Thus, Plaintiffs' section 1981 claim must be dismissed.

### E. Section 1985

The Complaint similarly fails to state a claim under section 1985. Section 1985(3) is a "purely remedial statute" which gives "a civil cause of action when some otherwise defined federal right ... is breached in the manner defined by the section." *Great Am. Fed. Savings & Loan*

*Ass'n v. Novotny,* 442 U.S. 366, 376, 99 S.Ct. 2345, 2351, 60 L.Ed.2d 957 (1979). The courts have held that plaintiffs may not assert under section 1985(3) a claim for a violation of a federal right already addressed through a comprehensive legislative scheme. For example, a plaintiff may not bring a cause of action under section 1985 to redress violations of the Equal Pay Act. *See Lowden v. William M. Mercer, Inc.,* 903 F.Supp. 212, 221–22 (D.Mass. 1995); *see also Kolenda v. Harvey Cadillac Co.,* No. G88–551, 1990 WL 120643, *6 (W.D.Mich.1990) ("[R]emedies provided by Congress in the [Equal Pay Act] can be effective only by holding that the deprivation of a right created by the [Equal Pay Act] cannot serve as the basis for a Section 1985(3) cause of action."); *Whitten v. Petroleum Club of Lafayette,* 508 F.Supp. 765, 772 (W.D.La.1981) (same). Likewise, the U.S. Supreme Court has held that section 1985(3) "may not be invoked to redress violations of Title VII [of the Civil Rights Act of 1964]." *Novotny,* 442 U.S. at 378, 99 S.Ct. at 2352. Here, Plaintiffs attempt to assert a section 1985 conspiracy claim based on substantive violations of the Fair Labor Standards Act. Because the FLSA constitutes a comprehensive statutory scheme, and Plaintiffs' assertion of a section 1985(3) action to redress violations of the substantive provisions of the FLSA would undermine that scheme, their claim under section 1985 is subject to dismissal.

## V. CONCLUSION

In view of the foregoing, the Court hereby **GRANTS** Defendants' Motions to Dismiss, and **DISMISSES** the Complaint. Further, the pendent state law claims raised in the Complaint are hereby **DISMISSED WITHOUT PREJUDICE.** *See Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 357, 108 S.Ct. 614, 623, 98 L.Ed.2d 720 (1988) (where the basis for federal question jurisdiction has been eliminated from a case in its early stages, leaving only state law claims, the district court should decline to continue asserting jurisdiction).

**IT IS SO ORDERED.**