**Jean DENCHY, et al.**

**v.**

**EDUCATION AND TRAINING CONSULTANTS OF PA, INC., et al.**

**Civ. A. No. 91–0512.**

United States District Court, E.D. Pennsylvania.

Sept. 22, 1992.

David E. Brenner, Philadelphia, Pa., for plaintiffs.

John C. Butera, Kevin A. Palmer, King of Prussia, Pa., Michael I. Levin, Willow Grove, Pa., for defendants.

## OPINION AND ORDER

VAN ANTWERPEN, District Judge.

### I. INTRODUCTION

On January 24, 1991, plaintiffs, five [1] privately employed educators, filed this action alleging civil rights violations (Counts I and II) and pendent state law claim for breach of contract (Count III). Presently before the Court are defendants' motion for summary judgment [2] and plaintiffs' motion for partial summary judgment.

Plaintiffs are two current and two former employees of defendant Education and Training Consultants of Pennsylvania, Inc. ("ETC"). ETC is a private corporation and independent contractor which provides certain auxiliary services, such as guidance and remedial education, to nonpublic school students. These services are provided pursuant to contracts with defendant Schuykill Intermediate Unit No. 29 ("IU 29"). IU 29 is a part of the Pennsylvania public school system pursuant to the Public School Code of 1949 ("School Code"), 24 Pa.Stat.Ann.

§ 1–101, *et seq.* (Purdon 1992 Supp.) IU 29 administers and oversees programs which provide various specialized educational services to both public and nonpublic school students within its area of operation. 24 Pa.Stat.Ann. §§ 9–951—9–974 (Purdon 1992 Supp.).

Defendants Celidonio and Donohue are private individuals who are shareholders and officers of ETC. Defendant Alspach is the current executive director of IU 29.

### II. SUMMARY JUDGMENT STANDARD

The court shall render summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). An issue is "genuine" only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). A factual dispute is "material" only if it might affect the outcome of the suit under governing law. *Id.* at 248, 106 S.Ct. at 2510. All inferences must be drawn and all doubts resolved in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *Gans v. Mundy,* 762 F.2d 338, 341 (3d Cir.), *cert. denied,* 474 U.S. 1010, 106 S.Ct. 537, 88 L.Ed.2d 467 (1985).

On motion for summary judgment, the moving party bears the initial burden of identifying for the court those portions of the record that it believes demonstrate the absence of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). To defeat summary judgment, the non-moving party must respond with facts of record that contradict the facts identified by the mov-

---

1. Plaintiff Marlene Wolfgang voluntarily dismissed her claims by Order dated September 20, 1991.

2. Defendant ETC has also moved for Rule 11 sanctions.

ant and may not rest on mere denials. *Id.* at 321 n. 3, 106 S.Ct. at 2552 n. 3 (quoting Fed.R.Civ.P. 56(e)); *see First Nat'l Bank of Pennsylvania v. Lincoln Nat'l Life Ins. Co.,* 824 F.2d 277, 282 (3d Cir.1987). The non-moving party must demonstrate the existence of evidence that would support a jury finding in its favor. *See Anderson,* 477 U.S. at 248–49, 106 S.Ct. at 2510–11.

## III. FACTUAL BACKGROUND

There is no dispute between the parties as to the following facts. The plaintiffs are present or former employees of defendant ETC pursuant to written contracts with ETC[3]. Defendant ETC is a private corporation. Defendants Celidonio and Donohue are private individuals and are not officers, agents or employees of the Commonwealth or any of its political subdivisions (Affidavit of Celidonio, ¶ 8; Affidavit of Donohue, ¶ 8). Neither Celidonio nor Donohue are officers, agents, or employees of IU 29. (Affidavit of Celidonio, ¶ 9; Affidavit of Donohue, ¶ 9)

During the course of employment with ETC, the plaintiffs received their salary, W–2 wage statements and health insurance benefits from ETC. Plaintiffs do not have written contracts with IU 29, do not receive a salary, W–2 wage statements or health insurance from IU 29. At all times during their employment, plaintiffs received all of the benefits set forth in their written contracts with ETC.

IU 29 is one of 29 intermediate units established by the Commonwealth. 24 Pa. Stat.Ann. § 9–952 (Purdon 1992 Supp.). Intermediate units were established as successors to the county boards of school directors and for the purpose of providing auxiliary services to public and nonpublic schools on a regional basis. *See Arnold v. BLaST Intermediate Unit 17,* 843 F.2d 122, 124–25 (3d Cir.1988); *Commonwealth ex rel. Waychoff v. Tekavec,* 456 Pa. 521,

319 A.2d 1 (1974), 24 Pa.Stat.Ann. §§ 9–956, 9–972.1 (Purdon 1992 Supp.). Each intermediate unit is governed by a thirteen member board of directors composed of members of the board of directors of the school districts assigned to that intermediate unit. 24 Pa.Stat.Ann. § 9–960 (Purdon 1992 Supp.). The staff of each intermediate unit consists of an executive director and "such assistant executive directors, program specialists, and other personnel as the intermediate unit board of directors deems necessary to employ." 24 Pa.Stat. Ann. § 9–963(a) (Purdon 1992 Supp.).

The powers and duties of defendant Alspach as executive director are set by 24 Pa.Stat.Ann. § 9–965 (Purdon 1992 Supp.). These powers and duties include administering the intermediate unit program of services, appointing professional staff subject to the approval of the intermediate unit board of directors, preparing the budget for adoption by the intermediate unit board of directors, directing expenditures, appointing advisory groups, providing information and reports to the superintendent of Public Instruction, and performing such other duties as may be required by the intermediate unit board of directors and the regulations of the State Board of Education. *Id.* The governing board of IU 29 also provides a written job description for Alspach which includes various other supervisory and administrative duties. Alspach, however, is under no statutory or IU 29 mandated responsibility to police the actions of independent contractors to insure compliance with the law by contractors. (Affidavit of Alspach, ¶ 6).

ETC established the plaintiffs' salary and perquisites. (Affidavit of Alspach, ¶ 7). Neither IU 29 nor Alspach were involved in any way in the establishment of the salaries and benefits provided by ETC to its employees. *Id.* IU 29 and Alspach did nothing to prevent ETC from paying the

---

**3.** Plaintiffs assert that the contract between ETC and IU 29 is void as being "improper and contrary to statute" and that the plaintiffs should be treated as IU 29 employees. This challenge presents an issue of state law. We do not reach this issue because of our disposition of plaintiffs' federal claims. Nonetheless, it is unclear to us how an unlawful contract between a governmental entity and a contractor automatically converts the employees of the contractor to employees of the governmental entity. Furthermore, we doubt plaintiffs' standing to raise this challenge.

same salary and perquisites that IU 29 paid its own employees. *Id.*

## IV. DISCUSSION

In Counts I and II, plaintiffs assert claims under the federal Civil Rights Act, 42 U.S.C. §§ 1983 and 1985, respectively. In Count I, plaintiffs allege that defendants, acting under color of state law, deprived plaintiffs of property rights and equal protection in violation of the Fourteenth Amendment, and the right of free association in violation of the First Amendment. In Count II, plaintiffs allege that defendants conspired to interfere with plaintiffs' civil rights.

Specifically, plaintiffs assert that they are entitled by law to the same salary, benefits, tenure and other perquisites as bestowed upon persons employed by IU 29 [4]. Because the plaintiffs have not received the same salary and perquisites from ETC, or have not received the alleged statutory salary and benefits from ETC that IU 29 is paying to its employees, they assert that they are being deprived of their property rights and equal protection.

Defendants have moved to dismiss these claims on the grounds that defendants did not act under color of state law within the meaning of § 1983, and that plaintiffs have not alleged any race or class-based discriminatory conduct as required by § 1985(3).

### A. *Plaintiffs Section 1983 Claim*

■ Title 42 U.S.C. § 1983 provides a remedy for deprivations of rights secured by the Constitution and laws of the United States when that deprivation takes place "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory...." [5] The central issue in determining whether a person has acted "under color of state law" and, thus, is subject to suit under § 1983 is whether the alleged infringement of federal rights is "fairly attributable to the State." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937, 102 S.Ct. 2744, 2753, 73 L.Ed.2d 482 (1982). The "under color of state law" requirement of § 1983 is treated the same as the "state action" requirement of the Fourteenth Amendment. *Lugar*, 457 U.S. at 928, 102 S.Ct. at 2749. The purpose of this requirement is "to assure that constitutional standards are invoked only when it can be said that the State is *responsible* for the specific conduct of which the plaintiff complains." *Blum v. Yaretsky*, 457 U.S. 991, 1004, 102 S.Ct. 2777, 2786, 73 L.Ed.2d 534 (1982). Since the time of the *Civil Rights Cases*, 109 U.S. 3, 3 S.Ct. 18, 27 L.Ed. 835 (1883), the "state action requirement" has reflected a desire to preserve "individual

---

**4.** The basis of this claimed entitlement is 24 Pa.Stat.Ann. § 9–963 (Purdon 1992 Supp.) which provides in relevant part:

(e) All professional and temporary professional employees of an intermediate unit shall have the same rights of tenure, minimum salaries and increments, leaves of absences because of illness, professional study or physical disability, sabbatical leaves, military leaves and exchange teacher leaves as professional and temporary professional employees of school districts.

....

(g) All employees of an intermediate unit shall be eligible for and become members of the Public School Employees' Retirement System of Pennsylvania, except that members of the State Employees' Retirement System may elect to remain members of such retirement system.

Plaintiffs assert that they are "professional employees" and therefore are entitled to the rights enumerated above. Because of our conclusion on the threshold question of state action, we do not reach questions relating to

whether plaintiffs are "professionals employees" within the meaning of the statute and whether the rights created by the Public School Code give rise to a property interest or the question of what procedural guarantees the Fourteenth Amendment would require if a property interest were found to exist.

**5.** Title 42 U.S.C. § 1983 provides in full:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United Stated or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia."

freedom by limiting the reach of federal law and federal judicial power" and avoid "imposing on the State, its agencies or officials, responsibility for conduct for which they cannot fairly be blamed." *Lugar v. Edmondson Oil Co.*, 457 U.S. at 936, 102 S.Ct. at 2753. The importance of this assurance is evident when, as here, the plaintiff seeks recovery based on the actions of a private party.

■■■ The Supreme Court has not articulated a single definitive standard for the determining the presence or absence of state action. Rather, the Court has formulated a number of approaches whose application depends upon the circumstances of the individual case. The only approaches relevant to the case before us are the "close nexus" test of *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974), which is applied in situations where there is a close connection between the State and the specific actions of a private party, and the "symbiotic relationship" test of *Burton v. Wilmington Parking Authority*, 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961), which is applied in cases where the state and the private party are interdependent.[6]

■■■ Plaintiffs first argue that state action is present because certain provisions of the School Code governing wages and other benefits apply to ETC and create a sufficiently close nexus between ETC and the Commonwealth, so that ETC's actions in failing to comply with the Code are attributable to the State. Plaintiffs rely primarily on the Supreme Court's decision in *Rendell–Baker v. Kohn*, 457 U.S. 830, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982). In *Rendell–Baker*, the Supreme Court held that the New Perspectives School, which was privately owned and operated, was not a state actor when the school discharged teachers who had opposed school policies and threatened to form a union. The Supreme Court rejected the plaintiffs' argu-

ment of state action despite virtually all of the school's income being derived from government funding and the extensive state regulation of the school. In particular, the Court held that the state regulation did not bear a sufficiently strong nexus to the plaintiffs' discharge to satisfy the state action requirement. *Id.*, 457 U.S. at 842, 102 S.Ct. at 2771–72.

Plaintiffs assert that the School Code, unlike the state regulation in *Rendell–Baker*, bears directly on the rights which they are allegedly being deprived. Plaintiffs argue, in essence, that because the State regulates the salaries and benefits of "professional employees" then the failure of ETC, an independent contractor, to comply with those regulations amounts to state action. Plaintiffs' argument misses the mark.

Under the "nexus" test, a court is to determine "whether there is a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself." *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351, 95 S.Ct. 449, 453, 42 L.Ed.2d 477 (1974); *Boyle v. Governor's Veterans Outreach & Assistance Center*, 925 F.2d 71, 76 (3d Cir.1991). Ordinarily, the State can be held responsible for a private decision:

> only when it has exercised coercive power or has provided such significant encouragement, either, overt or covert, that the choice must in law be deemed to be that of the State. [citations omitted]

*Blum v. Yaretsky*, 457 U.S. 991, 1004, 102 S.Ct. 2777, 2786, 73 L.Ed.2d 534 (1982). Thus, it is not the mere existence of a state statute or regulation, no matter how extensive, that creates a nexus between the governmental action and the challenged activity. Instead, it is where a state statute encourages or coerces a private party to act in a manner that deprives the plaintiff

---

**6.** The other approaches applied by the Supreme Court are the "public function" test, *see, e.g., Evans v. Newton*, 382 U.S. 296, 86 S.Ct. 486, 15 L.Ed.2d 373 (1966), in cases where the government after carrying out a particular function attempts to avoid its constitutional obligation by

transferring the function to a private party; and the "state compulsion" or "joint participation" test, *see, e.g., Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982), when the state, by its law, has compelled a particular act.

of a constitutional right that state action occurs. Where a private party, of its own accord, acts in a discriminatory manner, no nexus exists. For example, in *Moose Lodge No. 107 v. Irvis,* the Supreme Court held that racial discrimination by a private club did not amount to state action despite Pennsylvania statutes and regulations governing the sale of liquor because such statutes and regulations did not overtly or covertly encourage discrimination. *Moose Lodge No. 107 v. Irvis,* 407 U.S. 163, 173, 92 S.Ct. 1965, 1972, 32 L.Ed.2d 627 (1972). Here, as in *Moose Lodge,* neither the Commonwealth nor IU 29 has encouraged, approved, authorized or compelled defendant ETC's conduct. ETC's decision to pay its employees at a rate lower than that set by statute is a purely private decision and cannot fairly be attributed to the Commonwealth[7].

For these reasons, we conclude that the Commonwealth of Pennsylvania is not sufficiently connected with defendant ETC's action in setting compensation for its employees as to make ETC's conduct in doing so attributable to the State for purposes of § 1983.[8]

Furthermore, IU 29's or the Commonwealth's failure to enforce the statutory provisions relied upon by plaintiffs does not create state action. First, plaintiffs fail to cite a single authority for the proposition that IU 29 has a legal obligation to enforce the terms of compensation set by the School Code. Second, "[m]ere approval of or acquiescence in the initiatives of a private party is not sufficient to justify holding the State responsible for those initiatives." *Blum v. Yaretsky,* 457 U.S. 991, 1004–05, 102 S.Ct. 2777, 2786, 73 L.Ed.2d 534 (1982); *Flagg Bros., Inc. v. Brooks,* 436 U.S. 149, 164–65, 98 S.Ct. 1729, 1737–

38, 56 L.Ed.2d 185 (1978); *Jackson v. Metro. Edison Co.,* 419 U.S. 345, 357, 95 S.Ct. 449, 456, 42 L.Ed.2d 477 (1974).

Plaintiffs next make a vague and general contention that the School Code creates a symbiotic relationship. The symbiotic relationship test analyzes the relationship between the State and the private party. The action of the private party will be considered that of the State if the State has "so far insinuated itself into a position of interdependence with [the acting party] that it must be recognized as a joint participant in the challenged activity ..." *Burton v. Wilmington Parking Authority,* 365 U.S. 715, 725, 81 S.Ct. 856, 862, 6 L.Ed.2d 45 (1961). In *Burton,* the Supreme Court found that a restaurant located within a public parking garage that practiced racial discrimination, to be state action because the State had many obligations and responsibilities regarding the operation of the restaurant; mutual benefits were conferred; and the restaurant operated physically and financially "as an integral part of a public building devoted to a public parking service." *Id,* 365 U.S. at 724, 81 S.Ct. at 861.

In support of their argument, plaintiffs rely on *Krynicky v. Univ. of Pittsburgh,* 742 F.2d 94 (3rd Cir.1984), *cert. denied,* 471 U.S. 1015, 105 S.Ct. 2018, 85 L.Ed.2d 300 (1985) for the proposition that the School Code, which creates and defines the role and purpose of the intermediate units, also creates a symbiotic relationship. In *Krynicky,* the Third Circuit held that the University of Pittsburgh is so closely intertwined with the Commonwealth that actions taken by the University are under color of state law. The statutes that created and defined the Commonwealth's relationship with the University states that the University is to

---

**7.** If we were to accept plaintiffs' argument that ETC's noncompliance with the School Code is tantamount to state action, then any violation of a state statute or regulation by an independent contractor of a governmental entity would give rise to a cause of action under 42 U.S.C. § 1983. This simply cannot be the case. As the court noted in *Rendell–Baker* "[a]cts of such private contractors do not become acts of the government by reason of their significant or even total engagement in performing public contracts."

*Rendell–Baker,* 457 U.S. at 840–41, 102 S.Ct. at 2771.

**8.** Although not reaching the issue, we have serious reservations as to the applicability § 9–963 of the School Code to independent contractors such as ETC, the meaning given to the Code by the plaintiffs and whether the "rights" created by the Code give rise to protectable property interests within the meaning of the Fourteenth Amendment.

be an "instrumentality" of the Commonwealth. *Id.* at 102. To achieve this "linkage," the statute provide that one-third of the University's trustees are to be selected by the Commonwealth; that the Commonwealth will make annual appropriations to the University; that the State may set tuition schedules; and that the University must file annual reports of all instructional, administrative, and financial activities with the Governor. *Id.*

Upon consideration of the facts submitted, the kind of symbiotic relationship described in *Krynicky* is plainly not present in this case. Courts are reluctant to recognize a symbiotic relationship absent a high level of State involvement. *See Boyle v. Governor's Veterans Outreach & Assistance Center*, 925 F.2d 71 (3d Cir.1991) (The Governor's supervision of the distribution of federal funds to an unincorporated organization does not rise to the level of state involvement required by *Burton*); *Imperiale v. Hahnemann Univ.*, 776 F.Supp. 189 (E.D.Pa.1991), *aff'd*, 966 F.2d 125 (3d Cir.1992) (a "state-aided" but not "state-related" institution does not enjoy a symbiotic relationship with the Commonwealth). ETC is an independent contractor whose services can be discontinued by IU 29 by simply not renewing its contract. ETC is not created by state statute, is not part of the public school system of the Commonwealth, and is not an instrumentality of the Commonwealth. The "nuts and bolts" of ETC or its operation are not established by law. There is not even evidence of record to indicate that ETC enjoys a contractual relationship with the Commonwealth. Because no symbiotic relationship exists between ETC and either IU 29 or the Commonwealth, ETC's allegedly discriminatory conduct is not attributable to the State.[9]

### B. *Plaintiffs' Section 1985 Claim*

■ In Count II, plaintiffs allege that in contracting to provide auxiliary services without complying with the salaries and perquisites set by the School Code, defendants conspired to interfere with plaintiffs' civil rights in violation of 42 U.S.C. § 1985(3). Section 1985(3), unlike § 1983, can provide a cause of action against purely private conspiracies; thus, state action is not an essential element of all § 1985(3) claims. However, when the alleged conspiracy is aimed at a right that is by definition a right only to be protected from State interference, such as First and Fourteenth Amendment rights, the plaintiff must prove State involvement in the interference with that right. *United Bhd. of Carpenters & Joiners v. Scott*, 463 U.S. 825, 833, 103 S.Ct. 3352, 3358, 77 L.Ed.2d 1049 (1983). Since plaintiffs have failed to establish state action, Count II must for this reason alone be dismissed. Moreover, as defendants correctly contend, Count II must also be dismissed because plaintiffs failed to allege or demonstrate a sufficient "class-based discrimination."

■ In contrast to § 1983, which provides a cause of action for the violation of any constitutional right, § 1985(3) provides a cause of action only when the plaintiff's rights to equal protection, privileges, or immunities are violated. *Jennings v. Shuman*, 567 F.2d 1213, 1221 (3d Cir.1977). The Supreme Court has held that this "means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Griffin v. Breckenridge*, 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971); *see also Burt v. Ferrese*, 871 F.2d 14, 17 (3d Cir.1989); *Pratt v. Thornburgh*, 807 F.2d 355, 357 (3d Cir.1986), *cert. denied*, 484 U.S. 839, 108 S.Ct. 125, 98 L.Ed.2d 83 (1987).

■ What constitutes a class for § 1985(3) purposes has not been fully decided. In this circuit, however, it is clear that § 1985(3) protects only against discrimination based upon "immutable characteristics," such as race or gender, for which the members of a class have no

---

9. Plaintiffs also appear for some reason to assert that the School Code creates a symbiotic relationship between IU 29 and the Commonwealth. Because the challenged acts are those of ETC alone, it is unnecessary to reach this issue. ETC is a private actor; the status of IU 29 as acting "under color of state law" is irrelevant to this action.

responsibility. *Carchman v. Korman Corp.*, 594 F.2d 354, 356 (3d Cir.), *cert. denied*, 444 U.S. 898, 100 S.Ct. 205, 62 L.Ed.2d 133 (1979) (quoting *Novotny v. Great Am. Fed. Sav. & Loan Assoc.*, 584 F.2d 1235, 1243 (3d Cir.) (en banc), *vacated on other grounds*, 442 U.S. 366, 99 S.Ct. 2345, 60 L.Ed.2d 957 (1979)). In keeping with Supreme Court precedent, the court limited § 1985(3) protection to victims of "historically pervasive discrimination." *Id.* Other courts have, in limited circumstances, included discrimination based on national origin or religion in the definition of class-based animus. *Gomez v. City of West Chicago, Ill.*, 506 F.Supp. 1241, 1245 (N.D.Ill.1981); *Arnold v. Tiffany*, 359 F.Supp. 1034, 1036 (C.D.Cal.), *aff'd*, 487 F.2d 216 (9th Cir.1973), *cert. denied*, 415 U.S. 984, 94 S.Ct. 1578, 39 L.Ed.2d 881 (1974). In contrast, § 1985(3) has "never been held to apply to private, economically motivated conspiracies." *C & K Coal Co. v. United Mine Workers of Am.*, 704 F.2d 690, 700 (3d Cir.1983); *see also United Bhd. of Carpenters & Joiners v. Scott*, 463 U.S. 825, 837, 103 S.Ct. 3352, 3361, 77 L.Ed.2d 1049 (1983).

■ Although plaintiffs teach at predominantly parochial schools, nowhere do they contend discrimination based on their religion or religious beliefs. Rather, plaintiffs claim, without more, that they are discriminated against because they teach in parochial schools. Parochial school teachers are not a protected group within the ambit of § 1985(3) and are not victims of "historically pervasive discrimination." *Carchman*, 594 F.2d at 356; *see Pitts v. Board of Educ. of U.S.D. 305, Salina, Kansas*, 869 F.2d 555, 557 (10th Cir.1989). Therefore, plaintiffs' § 1985(3) claim must also be dismissed since plaintiffs failed to allege or demonstrate a sufficient "class-based discrimination."

### C. *The Breach of Contract Claim*

■ Plaintiffs also allege in Count III that the provisions of the School Code are implied by law into their employment contracts with ETC, and that since ETC allegedly failed to compensate them in accor-

dance with the School Code, ETC has breached those employment contracts. However, since all the federal claims have been dismissed from this case, there is no need to address the dismissal of the breach of contract claim on the merits. Under these circumstances, the decision to entertain or dismiss the pendent state law claims is within the district court's discretion. Courts should ordinarily decline to exercise supplemental jurisdiction over state law claims when the federal claims are dismissed. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966); *Weaver v. Marine Bank*, 683 F.2d 744, 746 (3d Cir. 1982); 28 U.S.C. § 1367(c)(3). Therefore, we decline to exercise supplemental jurisdiction over plaintiffs' breach of contract claim. We note that the parties may pursue this matter in state court. 28 U.S.C. § 1367(d); 42 Pa.Stat.Ann. § 5103(b)(2) (Purdon 1992 Supp.).

### V. CONCLUSION

Accordingly, defendants' motions for summary judgment on plaintiffs' §§ 1983 and 1985(3) claims in Counts I and II is granted. Defendants' motion for summary judgment on plaintiffs' breach of contract claim in Count III is denied without prejudice.