Beverly C. LOWDEN, Plaintiff,

v.

WILLIAM M. MERCER, INC., Defendant.

Civ. A. No. 94–11351–RCL.

United States District Court, D. Massachusetts.

Oct. 17, 1995.

Matthew Cobb, Law Firm of Matthew Cobb, Boston, MA, for Plaintiff.

Ilene Robinson, Louis A. Rodrigues, Sullivan & Worcester, Boston, MA, for Defendant.

LINDSAY, District Judge.

Report and Recommendation *ACCEPTED*.

*REPORT AND RECOMMENDATION RE: DEFENDANT'S MOTION TO DIS- MISS (DOCKET ENTRY # 3); DE- FENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT AND FOR SANCTIONS (DOCKET ENTRY # 6); PLAIN- TIFF'S CROSS-MOTION FOR RULE 11 SANCTIONS (DOCKET ENTRY # 8)*

September 29, 1995

BOWLER, United States Magistrate Judge.

Pending before this court in the above styled civil rights action are the following motions: (1) a motion to dismiss the original complaint filed by defendant William M. Mercer, Inc. ("Mercer"), a company engaged in providing consulting services with respect to employee benefit and welfare plans (Dock- et Entry # 3); (2) Mercer's motion to dismiss the first amended complaint which plaintiff Beverly C. Lowden ("Lowden") filed as a matter of right after Mercer filed the motion to dismiss the original complaint (Docket En- try # 6); (3) Mercer's motion for sanctions due to Lowden's filing the first amended complaint without responding to Mercer's motion to dismiss the original complaint (Docket Entry # 6); and (4) Lowden's mo- tion for sanctions due to Mercer filing the purportedly frivolous motion for sanctions (Docket Entry # 8). After conducting a hearing, this court took the motions (Docket Entry ## 3, 6 & 8) under advisement. (Docket Entry # 15).

*PROCEDURAL BACKGROUND*

Lowden, a former female employee of Mercer above the age of 40, originally filed this action on the basis of a violation of: (1) 42 U.S.C. § 2000(e) *et seq.* ("Title VII") (Count I); (2) 29 U.S.C. § 206(d) ("the Equal Pay Act") (Count II); (3) 29 U.S.C. § 621 *et seq.,* also known as the Age Discrimination in Employment Act of 1967 ("ADEA") (Count III); (4) 42 U.S.C. § 1986 ("section 1986") (Count IV); (5) Massachusetts General Laws chapter 151B ("chapter 151B") (Count V); and (6) section 11H and 11I of Massachusetts General Laws chapter 12 ("chapter 12") (Count VI). (Docket Entry # 1). In lieu of filing an answer, Mercer filed a motion to dismiss the complaint (Docket Entry # 3) together with a supporting memorandum (Docket Entry # 4). Lowden then filed a first amended complaint (No Docket Entry No. Assigned) which Mercer also moves to dismiss (Docket Entry # 6).

The first amended complaint, with minor modifications, tracks the language of the original complaint with respect to the factual allegations. The first amended complaint also raises the same six causes of action as the original complaint but adds certain addi- tional bases to the causes of action in counts IV and VI.

Mercer's motion to dismiss the first amended complaint asserts the same three arguments Mercer employed to seek dismiss- al of the original complaint. Therefore, Mer- cer incorporates by reference a number of the arguments from its motion to dismiss the original complaint into its motion to dismiss the first amended complaint. In so doing, Mercer specifically identifies the pages and the arguments it wishes to incorporate by reference.

Lowden objects to Mercer's use of Rule 10, Fed.R.Civ.P. ("Rule 10"), as a means to in- corporate Mercer's previous arguments. Due to Lowden's procedural objection, Low- den fails to address on a substantive basis any of the arguments which Mercer incorpo- rates by reference into its later pleading. Rather, Lowden confines its substantive ob- jections to the arguments Mercer raises for the first time in the memorandum in support of the motion to dismiss the first amended complaint.

Lowden reasons that she could amend the original complaint as a matter of right prior to Mercer filing an answer. Further, be- cause an amended complaint supersedes an original complaint, Lowden submits that the original complaint is withdrawn and, there- fore, motions and supporting memoranda ad- dressing the original complaint are also with- drawn. Consequently, such papers do not constitute "pleadings" within the meaning of Rule 10's language allowing incorporation by reference.

■ It is well settled that an amended complaint supersedes the original complaint. *See Loux v. Rhay*, 375 F.2d 55, 57 (9th Cir.1967) (amended complaint supersedes original which is thereafter treated as nonexistent); *Miesowicz v. Essex Group, Inc.*, 1994 WL 260645 at *2 (D.N.H. Apr. 12, 1994). It is also true that a plaintiff may amend the original complaint "once as a matter of course at any time before a responsive pleading is served." Fed.R.Civ.P. 15(a). A motion to dismiss is not a "responsive pleading" within the meaning of Rule 15(a), Fed. R.Civ.P. *See Kuehl v. FDIC*, 8 F.3d 905, 907 n. 4 (1st Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 1545, 128 L.Ed.2d 196 (1994). Thus, Lowden acted properly in filing a first amended complaint which thereby operates to supersede the original complaint.

■ Rule 10 provides that, "Statements in a pleading may be adopted by reference in a different part of the same pleading or in another pleading or in any motion." Fed. R.Civ.P. 10(c). The later pleading must "specifically identify which portions of the prior pleading are adopted therein." *Federal National Mortgage Association v. Cobb*, 738 F.Supp. 1220, 1227 (N.D.Ind.1990). Mercer's incorporation meets this standard. Moreover, it is appropriate to incorporate by reference an argument made in a motion to dismiss an original complaint despite the subsequent amendment of the complaint. *See, e.g., Macklin v. Butler*, 553 F.2d 525, 528 (7th Cir.1977). Lowden's contention that it is improper to consider the arguments which Mercer incorporates by reference into its motion to dismiss the first amended complaint is therefore without merit.

■ Like Lowden, Mercer also raises a procedural argument. Mercer maintains that the original and first amended complaints violate Rule 8(a) ("Rule 8"), Fed. R.Civ.P.[1] Fed.R.Civ.P. 8. Rule 8 requires the pleader to set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." Notice pleading under Rule 8 ordinarily requires a pleader "to set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." *Gooley v. Mobil Oil Corporation*, 851 F.2d 513, 515 (1st Cir.1988); *see generally Boston & Maine Corporation v. Town of Hampton*, 987 F.2d 855, 863–865 (1st Cir.1993); *Reed Paper Company v. Proctor & Gamble Distributing Company*, 807 F.Supp. 840, 849 (D.Me.1992).

■ While the allegations in the first amended complaint span 24 pages, they are not so verbose, repetitive or confusing so as to prevent Mercer from understanding the basis of the claims in order to frame a response. While such a response may take greater effort due to the length and the detail of the allegations, the allegations are not repetitive and are phrased in concise sentences. Lowden expressly identifies particular dates and the individuals involved in the majority of the purported incidents. Further, the facts alleged are not complex and involve a relatively small number of individuals at Mercer. *Cf. Newman v. Commonwealth of Massachusetts*, 115 F.R.D. 341, 344 (D.Mass.1987) (disorganized, verbose and argumentative complaint with 70 pages of attached exhibits dismissed under Rule 8). It is not unduly burdensome for Mercer to question of these individuals in order to devise an appropriate answer. Mindful of the length and the detail of the factual allegations, however, this court will enlarge the time to file the answer up to and including October 30, 1995.

■ The remaining arguments Mercer propounds involve the merits of counts IV and VI. This court therefore turns to the facts assuming the truth of the facts alleged

1. Lowden's response that the complaints require detailed factual recitations because civil rights and conspiracy claims are subject to heightened standards of pleading is unconvincing. Lowden relies on cases predating the 1993 decision of the Supreme Court in *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, ——, 113 S.Ct. 1160, 1163, 122 L.Ed.2d 517 (1993) ("federal court may [not] apply a 'heightened pleading standard'—more stringent than the usual pleading requirements of [Rule 8]—in civil rights cases alleging municipal liability under" 42 U.S.C. § 1983). *See Feliciano v. DuBois*, 846 F.Supp. 1033 (D.Mass.1994) (calling into 'doubt "the extent to which this court can now rely upon decisions predating *Leatherman* ").

in the first amended complaint for purposes of the motion to dismiss. Dismissal is appropriate if, accepting the truth of the factual allegations and drawing all reasonable inferences in Lowden's favor, *Watterson v. Page,* 987 F.2d 1, 3 (1st Cir.1993), Lowden " 'cannot recover on any viable theory.' " *Garita Hotel, Ltd. v. Ponce Federal Bank,* 958 F.2d 15, 17 (1st Cir.1992) (quoting *Correa–Martinez v. Arrillaga–Belendez,* 903 F.2d 49, 52 (1st Cir.1990)).

## FACTUAL BACKGROUND

Lowden began work at Mercer in September 1982 as a consultant in the area of compiling pension data. She was 43 years old at the time. Her prior experience included actuarial positions at another company for a 20 year period.

During the first three years of her tenure at Mercer, Lowden became a management consultant to various clients including a number of financial institutions such as State Street Bank. Although Lowden acquired the position of an associate by 1983, Mercer did not promote Lowden to the position of a principal despite a policy of promoting all associates to the position of a principal within a three year period. Mercer, however, promoted a number of similarly situated male employees from associate to principal positions.

In June 1985 John Regan III ("Regan") became the head of a newly merged office which included Lowden. Lowden was the only female actuary in the newly created office. Regan proceeded to diminish Lowden's responsibilities. For example, Regan refused to give Lowden input into decisions to award raises to Lowden's subordinates. He also complained that Lowden was not an "enrolled actuary"[2] although he did not make similar comments about male actuaries lacking this qualification.

In 1985 Lowden solicited and obtained State Street Bank ("State Street") as a client for a flexible benefits project worth an estimated $350,000 in revenues. Upon obtaining this business for Mercer, Mercer did not promote Lowden to the position of a principal notwithstanding a policy of awarding such a promotion as well as a raise and bonus to similarly situated male actuaries.

Regan also interfered with Lowden's decision to perform a marketing study for State Street and proceeded to direct a subordinate of Lowden's, Bill Lamb ("Lamb"), to perform the work. Lamb failed to perform the work in a satisfactory manner and Mercer eventually terminated his employment. Regan then criticized Lowden for ineffectively managing the marketing study.

In addition, Regan unsuccessfully attempted to remove Lowden as the managing consultant for State Street. He urged two actuaries at Mercer to give Lowden negative performance reviews. In 1986 Regan reassigned a number of Lowden's clients to other actuaries. In 1987 Regan refused to give Lowden an increase in salary although her revenues for Mercer increased from $490,000 in 1985 to $820,000 in 1986.

In late 1987 Thomas Shea ("Shea") replaced Regan as head of Lowden's office. Shea repeated Regan's practice of reassigning Lowden's clients to other male actuaries under the age of 40 with less experience than Lowden. Lowden continued to perform work for these clients although the new assignees received credit for the client revenues received by Mercer.

In 1989 Mercer informed Lowden that it would consider her for a bonus pool comprised of other actuaries if she become an enrolled actuary. Mercer did not enforce this precondition for male actuaries who participated in the bonus pool.

In 1990 Lowden requested additional responsibility from Mike Senoski ("Senoski"), a managing director of another Mercer office, due to the departure of two actuaries from Senoski's office. She also asked to be reassigned to Senoski's office because of the lack of secretarial and technical support in the office where Lowden worked. Lowden never received a response to the requests.

In July 1990 Lowden wrote a letter detailing the foregoing disparate treatment to Mercer's New York headquarters. Ron

---

**2.** An enrolled actuary is allowed to sign certain government forms.

Walker ("Walker"), Executive Vice President of Human Resources, responded that Mercer would not interfere unless the issue involved a Equal Employment Opportunity ("EEO") situation. Lowden replied by letter requesting an appointment and advising Walker that the matter constituted an EEO situation. During this time period, Senoski informed Lowden that she would be terminated if she pursued the EEO situation. Lowden therefore decided not to travel to New York and canceled her appointment.

In 1991 Lowden did not receive a raise in salary. She was the sole female actuary in her office at the time. Thereafter, she received a telephone call from Senoski who offered Lowden the opportunity to work in his office. Believing that she would receive more clients, Lowden accepted the offer and moved to Senoski's office. Senoski, however, proceeded to act offensively by repeatedly touching his genitals in Lowden's presence and circulating memoranda with sexual innuendos.

In 1992 Lowden did not receive a raise in salary. In the spring of 1992 she met with two individuals in Mercer's corporate headquarters in New York. In December 1992 one of these individuals again met with Lowden and prepared a memorandum directing that Lowden make a transition from the defined benefits area to the group insurance area. The transition never took place despite Lowden's repeated inquiries to Senoski and to Regan who then worked in Mercer's corporate headquarters.

In February 1993 Mercer announced that Regan was reorganizing Lowden's region but did not anticipate any layoffs. Nevertheless, Mercer terminated Lowden in April 1993 due to the elimination of her position. The layoff disproportionately affected a larger number of female individuals over the age of 40. Of the seven terminated Mercer employees, five were over the age of 40 and two were women over the age of 50 As a result of the layoff, Mercer eliminated all of the female actuaries in the Boston office over the age of 50. At the time of her termination, Lowden generat-

ed an excess of $500,000 in revenues, an amount greater than the revenues generated by nonterminated male actuaries.

Lowden seeks compensatory damages, back pay, lost benefits and punitive damages as a result of the alleged discriminatory conduct on the part of Mercer.

## DISCUSSION

Mercer moves to dismiss Count IV which alleges the violation of section 1986 and Count VI which alleges the violation chapter 12. This opinion addresses the counts *seriatim*.

### I. *Count IV*

In Count IV Lowden claims that Mercer violated section 1986 through a conspiracy because Mercer failed to prevent the violation of section 1985. Lowden maintains that Mercer acted with a class based, invidiously discriminatory animus towards women and/or individuals over the age of 40. Lowden also asserts that the conduct of Regan, Shea, Senoski and others interfered with Lowden's privileges and immunities under federal law, her rights under the Equal Pay Act, her right to interstate travel, her right to equal protection and her right to be free from involuntary servitude.

■■■■ A prerequisite for a claim under section 1986 "is the existence of a conspiracy actionable under section 1985." *Chemlen v. Giulmette,* 1994 WL 548135 at *5 n. 8 (D.Mass. Aug. 30, 1994); *accord Jackson v. Faber,* 834 F.Supp. 471, 476 (D.Me.1993). In order to state a claim for relief under subsection three of section 1985,[3] Lowden "must show (1) that some racial, or perhaps otherwise class-based, invidiously discriminatory animus lay behind the conspirators' actions, and (2) that the conspiracy is aimed at interfering with rights that are protected against private, as well as official, encroachment." *Libertad v. Welch,* 53 F.3d 428, 446 (1st Cir.1995) (citing *Bray v. Alexandria Women's Health Clinic,* 506 U.S. 263, 266–67, 113 S.Ct. 753, 758, 122 L.Ed.2d 34 (1993), *Griffin*

---

**3.** Although Lowden fails to identify the particular subsection, her claims fall under subsection three. *See L.S.T., Inc. v. Crow,* 49 F.3d 679, 682

n. 4 (11th Cir.1995) (assuming applicability of subsection three to the plaintiff's claims despite absence of designation of such subsection).

*v. Breckenridge,* 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971),[4] and *Carpenters v. Scott,* 463 U.S. 825, 833, 103 S.Ct. 3352, 3358, 77 L.Ed.2d 1049 (1983)). Furthermore, section 1986 "provides no substantive rights itself; it merely provides a remedy for violation of the rights it designates." *Great American Federal Savings & Loan Association v. Novotny,* 442 U.S. 366, 372, 99 S.Ct. 2345, 2349, 60 L.Ed.2d 957 (1979). Because section 1985(3) only provides a cause of action "when some otherwise defined federal law ... is breached," *Great American Federal Savings & Loan Association v. Novotny,* 442 U.S. at 376, 99 S.Ct. at 2351, Mercer argues that Lowden fails to set forth a secured right protected under section 1985(3).[5]

As noted above, Lowden cites the following rights in Count IV: (1) privileges and immunities; (2) the Equal Pay Act; (3) interstate travel; (4) involuntary servitude; and (5) equal protection. With respect to the first and fifth rights, Mercer asserts that Lowden must establish state action.

■ While section 1985(3) may, in certain circumstances, reach purely private conspiracies, *Denchy v. Education and Training Consultants of Pennsylvania, Inc.,* 803 F.Supp. 1055, 1062 (E.D.Pa.1992), section 1985(3) does not apply "to private conspiracies that are 'aimed at a right that is by definition a right only against state interference' but applies only to such conspiracies as are 'aimed at interfering with rights ... protected against private, as well as official, encroachment.' " *Bray v. Alexandria Women's Health Clinic,* 506 U.S. at 278, 113 S.Ct. at 764 (quoting *Carpenters v. Scott,* 463 U.S. at 833, 103 S.Ct. at 3358). Thus far, the Supreme Court has identified only the right to be free from involuntary servitude under the Thirteenth Amendment and the right to

interstate travel as rights protected against private as well as official encroachment. *Tilton v. Richardson,* 6 F.3d 683, 686 (10th Cir.1993), *cert. denied,* ── U.S. ──, 114 S.Ct. 925, 127 L.Ed.2d 218 (1994). In other words, except for the aforementioned rights, section 1985(3) "applies to private conspiracies only in the event that the right aimed at by the conspiracy is one protected against both public and private interference." *Tilton v. Richardson,* 6 F.3d at 686; *accord Sampson v. Village Discount Outlet, Inc.,* 832 F.Supp. 1163, 1169 (N.D.Ill.1993), *affm'd.,* 43 F.3d 1474 (7th Cir.1994) ("allegation of state action is necessary to state a claim under § 1985(3) if 'the federal right relied upon is one requiring an element of state action' ").

■ Neither the right to privileges and immunities under Article IV and/or the Fourteenth Amendment nor the right to equal protection under the Fourteenth Amendment constitutes protected rights under section 1985(3) without proof of state involvement. *See Snyder v. Talbot,* 836 F.Supp. 26, 28 & 31 (D.Me.1993) (equal protection allegation did not allege rights protected against private encroachment and, hence, failed to state 1985(3) claim); *Denchy v. Education and Training Consultants of Pennsylvania, Inc.,* 803 F.Supp. at 1059 & 1062 (equal protection right requires state action in context of section 1985(3) claim); *Peavey v. Polytechnic Institute of New York,* 775 F.Supp. 75, 79 (E.D.N.Y.1991), *affm'd.,* 969 F.2d 1042 (2d Cir.), *cert. denied,* ── U.S. ──, 113 S.Ct. 341, 121 L.Ed.2d 257 (1992) (dismissing section 1985(3) claim in part because privileges and immunities afforded under Article IV and Fourteenth Amendment protect only against state encroachment); *see also Sampson v. Village Discount Outlet, Inc.,* 832 F.Supp. at 1169 (Fourth, Fifth and Four-

---

**4.** As set forth in *Griffin,* in order to establish a claim under section 1985(3), the plaintiff must allege that the defendant engaged in a conspiracy to deprive the plaintiff, directly or indirectly, of equal protection or of equal privileges and immunities. Further, the plaintiff must assert that one or more of the defendant/conspirators did an act in furtherance of the conspiracy whereby another was injured or deprived of exercising certain rights. *Griffin v. Breckenridge,* 403 U.S. at 102–103, 91 S.Ct. at 1798–99; *accord Tilton v. Richardson,* 6 F.3d 683, 686 (10th Cir.1993), *cert.*

*denied,* ── U.S. ──, 114 S.Ct. 925, 127 L.Ed.2d 218 (1994) (same).

**5.** In a footnote, Mercer also argues that section 1985(3) primarily, if not exclusively, applies to race based discrimination. The protection afforded under section 1985(3) is not limited to race but includes women as a protected class. *Libertad v. Welch,* 53 F.3d at 449; *accord Larson v. Miller,* 55 F.3d 1343, 1352 (8th Cir.1995) (collecting cases).

teenth Amendments do not apply to private conduct and therefore require showing of state action to support section 1985(3) claim). Accordingly, Lowden's claims that Mercer interfered with her privileges and immunities and/or her right to equal protection cannot support her section 1985(3) cause of action.

With respect to Lowden's right to interstate travel and to be free from involuntary servitude, Mercer submits that she fails to set forth facts demonstrating that these rights were the conscious objective of the conspiracy. Rather, according to Mercer, the alleged conspiracy only incidentally affected these rights.

■ As explained in *Bray,* the language of section 1985(3) prescribes conspiracies which are for "'the *purpose* [emphasis added] of depriving ... any person or class of persons of the equal protection of the laws, or of the privileges and immunities under the law.'" *Bray v. Alexandria Women's Health Clinic,* 506 U.S. at 274, 113 S.Ct. at 762 (quoting section 1985(3)). Section 1985(3) therefore "requires an intent to deprive persons of a right guaranteed against private encroachment." *Bray v. Alexandria Women's Health Clinic,* 506 U.S. at 274, 113 S.Ct. at 762. In *Bray,* because the defendant's conduct only incidentally affected the antiabortion protesters' right to interstate travel, the plaintiffs failed to establish a viable section 1985(3) claim based on interference with the right to interstate travel. *Bray v. Alexandria Women's Health Clinic,* 506 U.S. at 274–75, 113 S.Ct. at 762–763.

■ In other words, interference with the plaintiff's right to interstate travel must be a "conscious objective" or a "'predominant purpose'" of the conspiracy. *Bray v. Alexandria Women's Health Clinic,* 506 U.S. at 275, 113 S.Ct. at 762 (quoting *United States v. Guest,* 383 U.S. 745, 760, 86 S.Ct. 1170, 1179, 16 L.Ed.2d 239 (1966)). The "right must be 'aimed at'" and the defendant "must do more than merely be aware of" the deprivation of the plaintiff's right to interstate travel caused by the defendant's conduct. *Bray v. Alexandria Women's Health Clinic,* 506 U.S. at 275, 113 S.Ct. at 763; *see, e.g., Spencer v. Casavilla,* 44 F.3d 74, 79 (2d Cir.1994) (parents of murder victim failed to

show that the defendants aimed at or acted with the predominant purpose of depriving the victim of his right to travel as required under section 1985(3)); *Welch v. Board of Directors of Wildwood Golf Club,* 877 F.Supp. 955, 959 (E.D.Pa.1995).

In the case at bar, in July 1990 Senoski told "Lowden that she 'would be fired' if she raised [the] 'EEO' issue with New York corporate." (No Docket Entry No. Assigned, First Amended Complaint, ¶ 49). Lowden therefore canceled her appointment to travel to New York and meet with officials from Mercer's corporate headquarters. Thereafter in the spring of 1992 and again in December 1992 Lowden met with officials from the New York corporate headquarters. (No Docket Entry No. Assigned, First Amended Complaint, ¶¶ 61–62).

■ Similar to the situation at issue in *Bray,* Sinoski's interference with Lowden's right to travel interstate to New York was incidental to his purpose of preventing Lowden from meeting with corporate officials. It is unimportant that Lowden had to travel to New York to meet with these officials. Senoski would have been equally insistent against Lowden's meeting if the meeting were to take place in Boston. *Bray v. Alexandria Women's Health Clinic,* 506 U.S. at 274–75, 113 S.Ct. at 762–763 (noting that the plaintiffs "oppose abortion, and it is irrelevant to their opposition whether the abortion is performed after interstate travel"). Lowden, therefore, fails to state a section 1985(3) claim grounded on the interference with her right to interstate travel.

■ Turning to the claim for relief under section 1985(3) based on the Thirteenth Amendment, it is true that a "conspiracy to violate the Thirteenth Amendment may form the basis of a suit brought pursuant to § 1985(3)." *Baker v. McDonald's Corporation,* 686 F.Supp. 1474, 1480 (S.D.Fla.1987), *affm'd.,* 865 F.2d 1272 (11th Cir.1988), *cert. denied,* 493 U.S. 812, 110 S.Ct. 57, 107 L.Ed.2d 25 (1989) (citing *Griffin v. Breckenridge,* 403 U.S. at 106–107, 91 S.Ct. at 1800–01). The Thirteenth Amendment abolished slavery and involuntary servitude and gave Congress the ability to determine the badges and incidents of slavery

and to legislate against them. *Dixon v. City of Lawton, Oklahoma,* 898 F.2d 1443, 1448 (10th Cir.1990). Thus, together with the Thirteenth Amendment, section 1985(3) creates a remedy prescribing racially motivated conspiracies which, for example, interfere with a minority person's right to public accommodation. *See, e.g., Fisher v. Shamburg,* 624 F.2d 156, 162 (10th Cir.1980). The Thirteenth Amendment is implicated primarily when a private individual segregates or humiliates a black person from freely exercising rights guaranteed to all citizens. *Baker v. McDonald's Corporation,* 686 F.Supp. at 1480. The amendment, however, does not extend to each and every abuse predicated upon race. *Wong v. Stripling,* 881 F.2d 200, 203 (5th Cir.1989) (affirming dismissal of section 1985(3) claim based on Thirteenth Amendment brought by physician of Chinese ancestry asserting denial of hospital privileges).

■ In the case at bar, Lowden does not allege that she was discriminated against on the basis of her race or that she was treated differently on the basis of her race. Lowden does not contend that Regan, Senoski or other Mercer officials paid her less money because she belongs to a particular race. Lowden's allegations concern her gender and her age which, as indicated above, the Thirteenth Amendment does not encompass. Furthermore, Lowden's contentions are devoid of facts indicative of a conspiracy aimed at the Thirteenth Amendment as required under *Bray v. Alexandria Women's Health Clinic,* 506 U.S. at 274–75, 113 S.Ct. at 762–763. Accordingly, Lowden cannot employ the Thirteenth Amendment as the basis for an alleged conspiracy under section 1985(3). *See, e.g., Flynn v. Dyzwilewski,* 644 F.Supp. 769, 775 (N.D.Ill.1986) (section 1985(3) claim based on Thirteenth Amendment dismissed inasmuch as the plaintiff did not allege a conspiracy to place him "in jail because he was white or because he was Irish").

The remaining right Lowden employs to support a section 1985(3) cause of action is

the right to equal pay protected under the Equal Pay Act.[6] Mercer argues that section 1985(3) cannot usurp the comprehensive scheme and remedies afforded employees under the Equal Pay Act with respect to the same conduct. (Docket Entry # 4, p. 13). Mercer seeks to extend the reasoning in *Great American Federal Savings & Loan Association v. Novotny,* 442 U.S. at 372–378, 99 S.Ct. at 2349–2352 (violation of Title VII, which provides detailed statutory framework, cannot form the basis of section 1985(3) claim), to preclude application of the Equal Pay Act to support a section 1985(3) cause of action.

■ "The Equal Pay Amendments to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq.* proscribes (sic) discrimination on the basis of sex in the compensation of equal work (with certain enumerated exceptions)." *Lyon v. Temple University,* 507 F.Supp. 471, 474 (E.D.Pa.1981). More importantly, the Equal Pay Act contains a specific statutory scheme to determine monetary damages. *Kolenda v. Harvey Cadillac Company,* 1990 WL 120643 at *6 (W.D.Mich. 1990). Under the Equal Pay Act, employees discriminated against on the basis of sex in the payment of wages may recover "the amount of wages wrongfully withheld," *Kolenda v. Harvey Cadillac Company,* 1990 WL 120643 at *6 (citing 29 U.S.C. §§ 206(d)(3) and 216(b)), "an additional equal amount as liquidated damages," 29 U.S.C. § 216(b), "reasonable attorney's fees ... and costs of the action." 29 U.S.C. § 216(b); *Kolenda v. Harvey Cadillac Company,* 1990 WL 120643 at *6.

■ In contrast to the substantive and procedural provisions of the Equal Pay Act, section 1985(3) is a "purely remedial statute" which gives "a civil cause of action when some otherwise defined federal right ... is breached in the manner defined by the section." *Great American Federal Savings & Loan Association v. Novotny,* 442 U.S. at 376, 99 S.Ct. at 2351. If a plaintiff could assert a violation of the Equal Pay Act

---

6. As previously stated, Lowden brings a claim for violation of the Equal Pay Act in Count II which

is not the subject of the motions to dismiss.

through section 1985(3), the plaintiff could avoid the specific and explicit monetary provisions of the Equal Pay Act and possibly obtain punitive damages, *Kolenda v. Harvey Cadillac Company,* 1990 WL 120643 at *6, which Lowden seeks as compensation for the alleged section 1985(3) violation. Thus, the "comprehensive plan" afforded employees under the Equal Pay Act "can be given unimpaired effectiveness only by holding that violation of the Equal Pay Act cannot be the basis for a cause of action under section 1985(c)." *Lyon v. Temple University,* 507 F.Supp. at 479; *accord Kolenda v. Harvey Cadillac Company,* 1990 WL 120643 at *6 ("remedies provided by Congress in the [Equal Pay Act] can be effective only by holding that the deprivation of a right created by the [Equal Pay Act] cannot serve as the basis for a [s]ection 1985(3) cause of action"). Following the reasoning and holding of *Lyon, Kolenda* and other cases, *see Larson v. School Board of Pinellas County, Florida,* 820 F.Supp. 596, 602 (M.D.Fla.1993) (dismissing section 1985(3) claim to the extent based on the Equal Pay Act); *Whitten v. Petroleum Club of Lafayette,* 508 F.Supp. 765, 772 (W.D.La.1981) ("§ 1985(3) may not be invoked against defendants to redress a violation of [the Equal Pay Act]"), Lowden may not employ the Equal Pay Act as the basis for a section 1985(3) claim.

Having addressed the federal rights cited by Lowden in Count IV, they all fail to set forth a claim for relief under section 1985(3). Lowden's claim in Count IV under section 1986 which "by definition depend[s] on a preexisting violation of section 1985," *Lyon v. Temple University,* 507 F.Supp. at 479, is therefore subject to dismissal.

## II. *Count VI*

In Count VI Lowden seeks recovery under chapter 12 by alleging that Mercer coerced her to forego exercising certain rights. She further contends that the acts described in Count VI are part of Mercer's custom of discriminating against women on the basis of age and/or sex.

In addition to other arguments, Mercer moves to dismiss Count VI on the ground that chapter 151B provides the exclusive remedy under Massachusetts law for employment discrimination. As previously noted, Lowden brings a chapter 151B claim in Count V which is not the subject of the motions to dismiss.

Massachusetts appellate courts as well as courts in this district uniformly find that chapter 12 "does not afford a right of action independent of the remedial scheme set out in [chapter] 151B." *Lajoie v. General Electric Company,* 1993 WL 343678 at *7 (D.Mass. Aug. 17, 1993); *accord Lewis v. Gillette Company,* 1993 WL 291771 at *10 (D.Mass. July 21, 1993), *affm'd.,* 22 F.3d 22 (1st Cir.1994) (chapter 151B is exclusive state remedy for employment discrimination thereby foreclosing chapter 12 claim); *Bergeson v. Franchi,* 783 F.Supp. 713, 718–721 (D.Mass. 1992) (chapter 151B precludes chapter 12 cause of action for sexual discrimination in the workplace); *Sereni v. Star Sportswear Manufacturing Corporation,* 24 Mass.App. Ct. 428, 509 N.E.2d 1203, 1205, *review denied,* 400 Mass. 1107, 513 N.E.2d 1289 (1987); *Mouradian v. General Electric Company,* 23 Mass.App.Ct. 538, 503 N.E.2d 1318, 1320– 1321, *review denied,* 399 Mass. 1105, 507 N.E.2d 1056 (1987) (chapter 151B forecloses relief for employment discrimination under chapter 12). Stated otherwise, chapter 12 does "not create an independent right to vindicate an alleged wrong which might have been the subject of investigation and possible vindication under [chapter] 151B." *Sereni v. Star Sportswear Manufacturing Corporation,* 509 N.E.2d at 1205. Similarly, a number of courts find that chapter 151B, "which provides a detailed framework to protect the citizens of the Commonwealth against employment discrimination," *Charland v. Muzi Motors, Inc.,* 417 Mass. 580, 631 N.E.2d 555, 557 (1994), also forecloses any relief provided for employment discrimination under the Equal Rights Act, Massachusetts General Laws chapter 93, sections 102 and 103 ("chapter 93"). *Woods v. Friction Materials, Inc.,* 30 F.3d 255, 264 (1st Cir.1994); *Martin v. Envelope Division of Westvaco Corporation,* 850 F.Supp. 83, 93–94 (D.Mass.1994); *Charland v. Muzi Motors, Inc.,* 417 Mass. 580, 631 N.E.2d at 558–559; *see also Desrosiers v. Great Atlantic & Pacific Tea Compa-*

*ny, Inc.*, 885 F.Supp. 308, 314 (D.Mass.1995) ("settled law" that, if applicable, chapter 151B "provides the sole state law remedy for sexual discrimination in the workplace").

Lowden's allegations do not create a circumstance where Mercer's conduct falls outside the reach of chapter 151B, *see, e.g., O'Connell v. Chasdi,* 400 Mass. 686, 511 N.E.2d 349, 353 n. 9 (1987), or where the cause of action consists of tort law preexisting the enactment of chapter 151B, *see, e.g., Comey v. Hill,* 387 Mass. 11, 438 N.E.2d 811, 817 (1982). *See Charland v. Muzi Motors, Inc.,* 417 Mass. 580, 631 N.E.2d 555, 559 (1994) (discussing and distinguishing *O'Connell* and *Comey* on the foregoing bases in context of finding that chapter 151B bars alternate remedy under chapter 93). Rather, Lowden wishes to bring a cause of action under chapter 12 to remedy wrongs falling within the purview of chapter 151B. The exclusivity of the remedy provided under chapter 151B, however, forecloses Lowden's ability to bring a chapter 12 cause of action in Count VI to redress wrongs within the reach of chapter 151B.[7]

### III. *Sanctions*

As a final matter, Mercer moves for sanctions against Lowden for violating Rule 11 ("Rule 11"), Fed.R.Civ.P., and requests an award of attorney's fees and expenses incurred in filing the second motion to dismiss. (Docket Entry # 6). Mercer contends that instead of filing a response to Mercer's original motion to dismiss, Lowden improperly filed the first amended complaint which, similar to the original complaint, purportedly violates Rule 8. Lowden's filing of the first amended complaint, which took place on August 8, 1994, thereby required Mercer to file a second motion to dismiss. Mercer filed its motion for sanctions on August 12, 1994.

The newly amended Rule 11 requires that the movant wait 21 days after the offending conduct before filing a motion for sanctions. Rule 11(c)(1)(A), Fed.R.Civ.P. The 21 day waiting period allows the opposing party an opportunity to cure the challenged conduct by, for example, withdrawing the offensive pleading. Mercer however, filed the motion for sanctions four days after Lowden filed the first amended complaint.

In addition, as previously noted, the first amended complaint and, by analogy the original complaint, do not violate Rule 8. Further, Lowden had the ability to file the first amended complaint as a matter of right under Rule 15(a), Fed.R.Civ.P. Accordingly, sanctions are inappropriate due to the absence of a Rule 11 violation.

■ Lowden moves for sanctions under Rule 11 against Mercer due to Mercer's filing the motion for sanctions. (Docket Entry # 8). Lowden therefore seeks an award of attorney's fees for having to oppose the purportedly frivolous motion for sanctions.

"As under the former Rule 11, the filing of a motion for sanctions is itself subject to the requirements of the rule and can lead to sanctions." Notes of Advisory Committee, Rule 11, 1993 Amendment. In seeking sanctions, however, Mercer made an objectively reasonable, good faith argument that Lowden's first amended complaint, which tracks much of the language of the original complaint, continued to violate Rule 8. In addition, Lowden failed to comply with the 21 day waiting period.[8] Lowden's motion for sanctions is therefore unavailing.

### *CONCLUSION*

In accordance with the above discussion, this court **RECOMMENDS**[9] that Mercer's motion to dismiss the first amended com-

---

**7.** As a result of this conclusion, this court need not address the remaining arguments Mercer raises to support the dismissal of Count VI.

**8.** Mercer filed its motion for sanctions on August 12, 1994. Nine days later, on August 21, 1994, Lowden filed the motion for sanctions.

**9.** Any objections to this Report and Recommendation must be filed with the Clerk of Court within ten days of receipt of the Report and

Recommendation to which objection is made and the basis for such objection. Any party may respond to another party's objections within ten days after service of the objections. Failure to file objections within the specified time waives the right to appeal the district court's order. *United States v. Escoboza Vega,* 678 F.2d 376, 378–79 (1st Cir.1982); *United States v. Valencia–Copete,* 792 F.2d 4, 6 (1st Cir.1986).

plaint (Docket Entry # 6) be **ALLOWED** to the extent that counts IV and VI are dismissed and otherwise **DENIED.** This court also **RECOMMENDS**[10] that Mercer's motion to dismiss the original complaint (Docket Entry # 3) be **DENIED** as moot. The requests for sanctions (Docket Entry ## 6 & 8) are **DENIED.** Mercer's time to file an answer to the first amended complaint is extended up to and including October 30, 1995.

---

**10.** See the previous footnote.